SAUL M. NECTOW vs. CITY OF CAMBRIDGE & another.

Suffolk.    January 17, 1927. — July 1, 1927.

Present: RUGG, C.J., BRALEY, CROSBY, & WAIT, JJ.

*Zoning.   Constitutional Law*, Zoning ordinance, Police power, Equal protection of law, Due process of law.

The decision of the city council of Cambridge in adopting, and of the mayor in approving, a zoning ordinance in December, 1923, and January, 1924, cannot be set aside in a suit in equity by the owner of land affected unless the court is compelled to conclude that the ordinance has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense.

In a suit in equity of the character above described, it appeared that the plaintiff's land was placed by the ordinance in a "residence use district"; that it was near the border line between land most available for residential uses and land best adapted for commercial or manufacturing enterprises; and that so far as it ever had been improved it had been devoted exclusively to residential uses; and a master found "that no practical use can be made of the land in question for residential purposes because . . . there would not be adequate return on the amount of any investment for the development of the property" and "that the districting of the plaintiff's land in a residence district would not promote the health, safety, convenience and general welfare of the inhabitants of that part of the defendant city, taking into account the natural development thereof and the character of the district and the resulting benefit to accrue to the whole city."   *Held*, that

(1) It could not be said as a matter of law that the zoning line established by the ordinance was whimsical and without foundation in reason;

(2) The ordinance was not violative of the rights secured to the plaintiff by the Constitution of this Commonwealth or by the Fourteenth Amendment to the Constitution of the United States.

Art. 5 of the Amendments to the Constitution of the United States does not govern the actions of the several States but only those of the Federal government.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on December 31, 1924, and afterwards amended, seeking to have the zoning ordinance of the city of Cambridge declared null and void and the defendant inspector of buildings ordered to issue a permit to the plain-

tiff "to erect any lawful building upon said tract, disregarding the provisions of said alleged ordinance."

The suit was referred to a master. The zoning ordinance in question was adopted by the city council of Cambridge on December 31, 1923, and approved by the mayor on January 7, 1924. Other material facts found by the master are stated in the opinion. By order of *Pierce*, J., an interlocutory decree was entered confirming the master's report, and the suit was reported to the full court for determination.

*P. J. Nelligan*, City Solicitor, for the defendants.

*J. E. Hannigan*, (*M. L. Orlov* with him,) for the plaintiff.

RUGG, C.J.    This is a suit in equity whereby the plaintiff seeks relief from the terms of a zoning ordinance as to certain of his land. It is not now questioned that the ordinance is valid so far as concerns the formalities of its adoption. See St. 1925, c. 87. The plaintiff at times here material was the owner of a tract of land in Cambridge containing about one hundred forty thousand square feet. It was situated on the southeasterly corner of Brookline Street and Henry Street. Its frontage on Brookline Street, a main avenue of travel, was about three hundred and five feet, and on Henry Street about seven hundred and fifty feet. It was somewhat irregular in shape, narrowing toward the rear or easterly end, where it was bounded by the Grand Junction Branch of the Boston and Albany Railroad. Along the southerly side, being about eight hundred feet in length, is a twenty-five-foot passageway designed for a spur track from the Grand Junction Branch. By the zoning ordinance the land here in question and hereafter called the locus, being that part of the larger tract directly on the corner of Brookline Street and Henry Street and containing about twenty-nine thousand square feet, was placed in the district designated as a "residence use district" and in a building district described as "R 3," while the remainder of the tract, containing approximately one hundred eleven thousand square feet and including the entire passageway, was placed in the district designated "unrestricted" and in a building district described as "U 2." The locus, thus placed in a residence use district, has a frontage of about three hundred and five

feet on Brookline Street, its westerly boundary, one hundred feet on Henry Street, its northerly boundary, and bounds easterly on the remainder of the tract about two hundred and sixty-four feet, and southerly on land of the Ford Motor Company about seventy-five feet.

The plaintiff's entire tract of land was vacant except that upon the part placed in the unrestricted district were a brick factory building and a dwelling house, since torn down to make way for a concrete warehouse erected subsequent to the passage of the ordinance. On the part restricted to residential uses, there was a dilapidated and abandoned mansion house formerly occupied as a residence by one Clark, the well known maker of astronomical telescopes. That house faced on Brookline Street and was for sale for many years for residential purposes. It has since been destroyed or taken down.

The land of the plaintiff at the time of the enactment of the zoning ordinance was free of all restrictions and available for every valuable use. The locus placed in the R 3 zone has never been used for any other than residential purposes. The remainder of the tract has always been vacant except for the dwelling house and factory to which reference has been made. The locus, by being in a residence use district under the zoning ordinance, may be used only for "dwellings, hotels, clubs, churches, schools, philanthropic institutions, greenhouses and gardening, with customary incident accessory uses," and the following uses are expressly prohibited: "Business and industry of all sorts. Buildings of 5 or more stories or over 60' high. Yards and courts where provided must be somewhat larger than at present. Buildings must be set back 5' and be at least 25' from the center of any street." It has been assumed in the argument that as a practical matter there are no restrictions imposed by the zoning ordinance upon the remainder of the plaintiff's tract of land.

The contention of the plaintiff is that the zoning ordinance as to the locus is unreasonable, an indefensible invasion of his rights, deprives him of the equal protection of the laws, and takes his property without due process of law.

The facts bearing upon these contentions are set forth in the master's report. There are three districts established by the zoning ordinance so far as here material, namely, unrestricted districts, business districts, and residence districts.

The surroundings of the locus as disclosed by the master's report are that directly opposite on Brookline Street are located several well kept single houses, and directly opposite on Henry Street are single and double wooden dwellings, all in good condition and well kept and all in the same residential district as the locus. Diagonally across Brookline Street from the locus and on the corner of Henry Street is a public park called Hastings Square. Adjoining the plaintiff's land on the south is the assembling factory, six stories in height, of a motor car company. Its plant occupies a large area. About five hundred and seventy-five men are there employed. Many automobiles are produced, most of which are shipped by freight and some are driven away. A part of the work done in this factory is noisy, and it is sometimes run at night. The Grand Junction Branch passes within six hundred feet of the locus. East and northeast of the plaintiff's land lies a substantial manufacturing district. The plaintiff's land is close to the business area and it is difficult if not impossible to differentiate the material and dominant characteristics of the automobile factory and the plaintiff's other adjoining land from those of the locus.

Shortly before the passage of the ordinance, the plaintiff had made a contract with a business company for the sale of about fifty-one thousand square feet of land, including the locus, at substantially $1.24 per foot. After the passage of the ordinance, this company refused to accept the deed because of the zoning restrictions therein contained. Shortly after the passage of the ordinance, the plaintiff sold to a company engaged in the wholesale grocery business about twenty-four thousand square feet of his remaining large tract of land for $30,000. On this land has been erected a concrete warehouse two stories in height. This is located about three hundred and seventy feet from Brookline Street. Within about seven hundred and fifty feet of the locus is a soap factory, from which emanate bad odors.

There is a greater demand for the locus for business purposes, including manufacturing, than for dwelling houses. No dwelling house has been erected in its immediate vicinity within the last twenty years, except one apartment house. Separated by Brookline Street from the locus is a district lying west and north covering a large area used almost exclusively for residential purposes and included by the ordinance in residential districts. The locus as zoned is worth about $8,000.

Specific findings of the master are: "Seemingly, it would not be financially advisable to build apartment houses on the" locus. "The erection of a first class mercantile building on the plaintiff's land, such as would be required for use in U district, would not substantially increase the fire hazard of the residential neighborhood. The insurance rates for dwelling houses would be substantially greater than for first class mercantile buildings in that district, . . . I am satisfied and I find as a fact that no practical use can be made of the land in question for residential purposes, because among other reasons herein related, there would not be adequate return on the amount of any investment for the development of the property. . . . I am satisfied that the districting of the plaintiff's land in a residence district would not promote the health, safety, convenience and general welfare of the inhabitants of that part of the defendant city, taking into account the natural development thereof and the character of the district and the resulting benefit to accrue to the whole city and I so find." Allegations in the bill, to the effect that the city council of the defendant, in zoning the locus in the residence district, did so for the purpose of providing a park or other open space on the plaintiff's land, are found by the master not to be supported.

In November, 1923, the city council of the defendant city referred to the mayor an order relating to widening Brookline Street adjacent to the locus and in June, 1925, an appropriation for such widening to seventy-five feet was adopted and approved by the mayor. If such widening

takes place, the depth of the locus on Brookline Street will be reduced to sixty-five feet. We interpret this and other findings in this connection to mean that, while there has been discussion as to this widening, no final action to that end has been taken by the public officers.

After the passage of the ordinance, the plaintiff applied to the city government for an amendment to the zoning ordinance so as to reclassify the locus as business or unrestricted land. This application was denied. Thereafter, he applied to the superintendent of buildings of the defendant city for a permit to construct a building essentially different from any allowed by the ordinance but otherwise lawful. He declined to issue such permit and thereupon the plaintiff, pursuant to G. L. c. 40, § 27, and St. 1924, c. 133, petitioned the board of appeals to vary the application of the ordinance so as to permit the plaintiff to erect a business building on the locus. This was refused. Thereupon the present suit was brought.

The validity in general of zoning legislation segregating within defined areas designated classes of manufacturing and mercantile business, establishing residential districts and excluding therefrom even retail stores, shops or other kinds of business, has been sustained against attack on constitutional grounds. *Opinion of the Justices,* 234 Mass. 597, 607. *Inspector of Buildings of Lowell* v. *Stoklosa,* 250 Mass. 52. *Spector* v. *Building Inspector of Milton,* 250 Mass. 63. *Brett* v. *Building Commissioner of Brookline,* 250 Mass. 73. *Euclid* v. *Ambler Realty Co.* 272 U. S. 365. The plaintiff of course accepts and is bound by these authorities. He does not assail the Cambridge zoning ordinance as a whole, unless and so far as he seeks to have it set aside in its effect in placing the locus in the residential district. His contention is that the particular zoning here in question has no support in the presence of any of the elements or combination of elements on which a valid exercise of the police power can be put forward for zoning purposes, and hence is unreasonable in its operation as to the locus and destroys rights secured to him both by the Constitution of this Commonwealth and by the Fourteenth Amendment to the Federal

Constitution. The findings of the master already summarized eliminate some of the factors commonly suggested as the basis for zoning.

It is manifest from the facts reported by the master and from the accompanying maps that the locus is near the border line between land most available for residential uses and land best adapted for commercial or manufacturing enterprises. It has not been urged that the land directly across Brookline Street or that across Henry Street from the locus has not been properly zoned in a residential district. Confessedly those lands are parts of large residential areas, stamped as such by established use. The locus, so far as it ever has been improved, has been devoted exclusively to residential purposes. If there is to be zoning at all, the dividing line must be drawn somewhere. There cannot be a twilight zone. If residence districts are to exist, they must be bounded. In the nature of things, the location of the precise limits of the several districts demands the exercise of judgment and sagacity. There can be no standard susceptible of mathematical exactness in its application. Opinions of the wise and good well may differ as to the place to put the separation between different districts. Seemingly, there would be great difficulty in pronouncing a scheme for zoning unreasonable and capricious because it embraced land on both sides of the same street in one district instead of making the center of the street the dividing line. When the general plan is sound, there may well be some flexibility in fixing the details to be worked out by the honest efforts of the public board. If it is thought that the locus is too narrow, there is nothing to prevent the plaintiff from adding to the depth of the locus by land from his remaining tract. No physical features of the locus stamp it as land improper for residence. Indeed, its accessibility to means of transportation, to centers of business, and to seats of learning, as well as its proximity to land given over to residence purposes, give to it many of the attributes desirable for land to be used for residence. The financial advantage of the plaintiff would be subserved by placing the locus in the unrestricted district and removing it from the residential

district. But manifestly that is not a decisive test. *Norcross* v. *Board of Appeal,* 255 Mass. 177, 185. The monetary loss to the plaintiff disclosed on this record does not appear to be greater in proportion than that in *Salem* v. *Maynes,* 123 Mass. 372, *Spector* v. *Building Inspector of Milton,* 250 Mass. 63, and *Euclid* v. *Ambler Realty Co.* 272 U. S. 365. See cases reviewed in 234 Mass. at pages 608–610. Courts cannot set aside the decision of public officers in such a matter unless compelled to the conclusion that it has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense. These considerations cannot be weighed with exactness. That they demand the placing of the boundary of a zone one hundred feet one way or the other in land having similar material features would be hard to say as matter of law. The case at bar appears to us to be distinguishable from *Dobbins* v. *Los Angeles,* 195 U. S. 223. *Buchanan* v. *Warley,* 245 U. S. 60, *Pennsylvania Coal Co.* v. *Mahon,* 260 U. S. 393, *Matter of Isenbarth* v. *Bartnett,* 206 App. Div. (N. Y.) 546, affirmed in 237 N. Y. 617, *Little Rock* v. *Pfeifer,* 169 Ark. 1027, and other cases on which the plaintiff relies.

The case at bar is close to the line. But we do not feel justified in holding that the zoning line established is whimsical and without foundation in reason. In our opinion it is not violative of the rights secured to the plaintiff either by the Constitution of this Commonwealth or by the Fourteenth Amendment to the Constitution of the United States.

The plaintiff has argued, also, that rights secured to him by the Fifth Amendment to the Constitution of the United States have been invaded. That amendment does not govern the actions of the several States but only those of the Federal government. *Commonwealth* v. *Gedzium,* 259 Mass. 453, 457, and cases there collected. It has no bearing on the case at bar.

It follows from what has been said that the zoning ordinance of Cambridge, so far as shown on this record, is in conformity to the enabling statute and does not exceed its

authorization.   G. L. c. 40, § 25.   It does not fall within the class of cases illustrated by *Goldstein* v. *Conner,* 212 Mass. 57, and *Cawley* v. *Northern Waste Co.* 239 Mass. 540, 544.

*Bill dismissed.*