WALTER I. SUNDLUN *v.* ZONING BOARD OF REVIEW OF THE CITY OF PAWTUCKET.

APRIL 3, 1929.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

RATHBUN, J. This is a petition for a writ of *certiorari* based upon the provisions of Section 2, Chapter 430, Pub. Laws, January Session, 1923, passed in amendment of and in addition to Chapter 57, G. L. 1923. The petition was filed for the purpose of obtaining a review of the decision of the respondent Board denying petitioner's application for a special exception to the Zoning Ordinance of the City of Pawtucket. The writ has been issued and the respondent Board has made return of certified copies of the papers pertaining to said application.

Said chapter 57, as amended by said chapter 430, authorizes, as a police regulation: "For the purpose of promoting health, safety, morals or general welfare", the representative council of the city of Newport and the city councils of other cities by ordinance to divide their respective municipalities into districts and within such districts to "regulate and restrict the erection, construction, reconstruction, alteration, repair or use of buildings, structures or land." "Such regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land;

to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality." By authority of said act as amended the city of Pawtucket adopted a zoning ordinance which became effective February 2, 1928. Said ordinance divided the city into six districts, viz., Residence districts A, B and C; Business districts; and Industrial districts A and B. The petitioner owns a vacant lot situated at the southeast corner of Broadway and Allen avenue in said city. The lot has a frontage of 103.35 feet on Broadway. The petitioner desires to erect on said lot a gasoline filling station. Although the greater part of Broadway is within a Business district, a short section thereof, comprising two or three blocks within which the petitioner's lot is situated is a Residence B district. Said chapter 430 authorizes cities, which have by authority of the enabling acts adopted zoning ordinances, to create a Board of Review with authority "in appropriate cases and subject to appropriate conditions and safeguards", to "make special exceptions to the terms of the ordinance in harmony with its general purpose and intent." By the terms of said ordinance gasoline filling stations may be erected within a Residence B district, if approved by the Board of Review. The city of Pawtucket created such a board which is known as the Zoning Board of Review of the City of Pawtucket. The petitioner applied to said board for such an exception in the application of the provisions of said ordinance as would permit him to erect a gasoline filling station on his said lot. After notice to the public and hearing the application was refused and the case is before us for review.

When the application was heard by the Board no sworn testimony was taken. The petitioner made a statement, as

did also a Mr. McAlevy, who filed a remonstrance signed by 34 persons owning land on or in the vicinity of Broadway and 51 other persons living in the same general vicinity. A clergyman, not a property owner, mailed to the Board a letter requesting that the application be denied. The Board evidently accepted as evidence the statements of petitioner and Mr. McAlevy. We will also consider said statements. When the case was heard by us two pieces of documentary evidence were introduced and it was agreed by counsel that the record contains all evidence that was before the Board.

Broadway commences at the northerly line of the city and terminates at Main street at a point very close to the business center of the city. From the petitioner's land to said northerly line, all privately owned land abutting on either side of Broadway, except two blocks and a fraction of another is zoned for business. Gasoline stations have been erected on Broadway at no great distance from the petitioner's land. Parallel lines of car tracks are maintained in the center of Broadway. A large amount of vehicular traffic, heavy and otherwise, passes over this street which is the main artery for traffic to and from the north. Across the street from the petitioner's land is a funeral home.

Mr. McAlevy expressed his opinion that a gasoline filling station would depreciate the value of land in the vicinity. His other statements of pertinent facts were as follows: "The tooting of horns, the chuckling of motors, the volumes of monoxide gas from the engines and the dirty grease pit all come under this service. A stream of cars at all hours of the day and night, the loud and boisterous talk and the noise which one hears are not pleasant. Then the privacy of the neighborhood will be destroyed by the building of such a station."

The petitioner's written application to the Board gives the following reasons for desiring an exception to the provisions of the ordinance: "Broadway is a main thoroughfare and is traveled heavily by auto vehicles. It is used largely

now, both in a northerly and southerly direction of the lot which is the subject of this application, for business purposes. The zoning of this said lot for residence purpose is contrary to its adaptability and suitability for proper use and without regard to reasonable consideration to the character and location of the lot. It would be contrary to good judgment and business sense to erect a residence upon this lot. This thoroughfare is now, and will be more so in the future, essentially busy. It is contrary to the provision of our statute to restrict this lot to residential purposes. Upon application being granted, will erect gasoline dispensing station with a view to beautify location and with a strong record for safety, cleanliness, etc. This property is now carrying fixed charges, including tax, interest, etc., amounting to about $1,500.00 per year. Must convert land into income bearing and prevent further loss." There is evidence that the value of all land in said district would be increased, rather than diminished, by zoning all of the district for business. Twenty-five persons owning land on Broadway in said district petitioned that the zoning map be revised by changing all of said district to a Business district. Thirty-one persons owning land on Broadway in said district and three owning land in the vicinity on Allen avenue, signed a petition requesting the granting of the petitioner's application.

We are satisfied from the evidence that the section of Broadway under consideration is no longer a desirable residential section and that the building of a one or two family house on the petitioner's valuable land would result in a financial loss. Considerable informal discussion was indulged in by the petitioner and Mr. McAlevy. He and the Board were asked by the petitioner what other remunerative use, in their opinion, he could make of the property. The Board—perhaps naturally—made no reply. The best suggestion which Mr. McAlevy could apparently make was: "Build a house and live in it." The ordinance permits in a Residence B district—in addition to the use

permitted in a Residence A district which is more exclusive as to use than a Residence B district—the following uses: (1) Two-family house; (2) apartment house, boarding house, or hospital; (3) a gasoline filling station or a stable, if approved by the Board of Review; (4) an aeroplane landing field, airship hangar, and accessory buildings and structures, if approved by the Board of Review.

The objectors apparently do not seriously dispute the petitioner's contention that any one of the limited uses permitted as a matter of right by the terms of the ordinance for the petitioner's land would be unremunerative. Their attitude appears to be that it is merely the petitioner's misfortune if the ordinance has deprived him of all beneficial use of his land.

The 14th Amendment to the Federal Constitution forbids the states to deprive any person of property without due process of law. The enjoyment of property is derived from its use. "There can be no conception of property aside from its control and use, and upon its use depends its value." *Ambler Realty Co.* v. *Euclid,* 297 Fed. 307 at 313. A regulation which substantially deprives an owner of all beneficial use of his property is confiscation and is a deprivation within the meaning of the 14th Amendment. Before the adoption of said ordinance the petitioner's land could have been used for any lawful purpose. No one will contend that the 14th Amendment, or any other constitutional provision, protects an owner in such use of his property as to amount to a quasi nuisance to the great detriment of his neighbors. Any regulation reasonably necessary for the protection of public health, public morals, public safety or public welfare in its proper sense is valid. *Barbier* v. *Connolly,* 113 U. S. 27.

The regulation, however, must be reasonable. In *City of Providence* v. *Stephens,* 47 R. I. at p. 391, SWEETLAND, C. J. said: "Zoning provisions interfere with and restrict the property rights of land owners and can be supported only when they represent a legitimate exercise of the police power of the state." In the same opinion it was held that:

"the separation of business, in the sense of trade, and the industrial activities of a city from its residential portions is a provision, which, if reasonably administered, may be supported in behalf of public safety, public health, comfort and convenience." In *State of Washington* v. *Roberge*, 49 Sup. Ct. Rep. 50, the court said: "Zoning measures must find their justification in the police power exerted in the interest of the public. . . . 'The governmental power to interfere by zoning regulations with the general rights of the land owner by restricting the character of his use, is not unlimited and, other questions aside, such restriction cannot be imposed if it does not bear a substantial relation to the public health, safety, morals or general welfare.' . . . Legislatures may not under the guise of the police power, impose restrictions that are unnecessary and unreasonable upon the use of private property or the pursuit of useful activities." Our opinion in *Heffernan* v. *Zoning Board*, 50 R. I. 26, 144 A. 674, contains the following statement: "We have held that when in the circumstances of a particular case the application of an ordinance completely deprived a landowner of all beneficial use of his land, that condition presented such elements of special and great hardship as would require that a zoning board should exercise its discretion to prevent complete confiscation of the applicant's land without compensation."

There can be no doubt that a gasoline filling station would, in some sections, under certain conditions, increase the fire hazard, and, therefore, be detrimental to public safety. But the fact that the ordinance permits such stations within a Residence B district, if approved by the Board of Review, demonstrates that the exclusion of such stations from Residence B districts is not essential to the general zoning plan, and that it is the intent of the ordinance that the Board should, on application being made, make an exception in favor of such stations in such districts wherever the existence of such a station would be reasonably consistent with a due observance of public health, safety, morals and

the general welfare in the proper sense. The owner's right to use his property cannot be curtailed without compensation, except by a legitimate exercise of the police powers. Said chapter 57, the original enabling act, made no provision for a board of review. But the legislature, evidently anticipating that a comprehensive zoning ordinance would inevitably work an unnecessary and undue hardship in individual cases and that it would be impracticable to remedy such evils by frequent amendments by the ordinance making body, wisely provided for an administrative body to be known as a board of review with authority to pass upon individual cases as they may arise and make exceptions to the terms of the ordinance. Section 1 of Chapter 430, provides that: "Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality." The petitioner contends that, in view of the ordinance, a use as a gasoline filling station is the most appropriate use to which his vacant land can be devoted. It must be assumed that it was the intention of the legislature and the ordinance making body that the Board of Review should so administer the ordinance as not illegally to deprive an owner of the beneficial use of his land.

We will briefly consider the objections urged by Mr. McAlevy. He has suggested annoyance from tooting of horns, "chuckling of motors", monoxide gas and a "stream of cars." It seems hardly conceivable that another gasoline filling station could add any perceptible burden, in the particulars suggested, on a main thoroughfare as heavily traveled by all kinds of motor vehicles as is Broadway. He suggests a possibility of loud and boisterous talk. It is not a matter of common knowledge that a gasoline filling station is a place where noisy and disorderly people congregate. In granting an exception the Board has authority to impose

116

all reasonable safeguards for safety, cleanliness, etc. With heavy traffic and other considerations, including an undertaking establishment and funeral home across the street, it would appear that the neighborhood has very little privacy to be invaded. The real ground of the main objection appears to be that a gasoline filling station would be offensive to the æsthetic taste of the objectors. In *City of Providence* v. *Stephens, supra,* SWEETLAND, C. J. said: "But private advantage or purely æsthetic considerations do not supply sufficient basis for the exercise of the police power." See also *Mayor* v. *Turk,* 129 A. 512 (Del.).

We hesitate to set aside the determination of public officers in a case of this nature, and it would be improper to do so unless it is clear that their action "has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense." *Nectow* v. *City of Cambridge,* 260 Mass. 441; 157 N. E. 618; 72 U. S. (L. ed.) 842.

We would expect that the first legitimate objection to a gasoline filling station would be that it would seriously imperil public safety. We can find nothing upon which to base a determination that the granting of the application would seriously threaten public safety. All of the evidence is to the contrary. There was no intimation that such station might affect public morals. We have already analyzed the objections which, by any stretch of the imagination, could be considered to have any relation to public health and the general welfare in the proper sense. The evidence on these phases of the case is clearly against the determination. We are forced to the conclusion that the Board, through misconception of duty, gave undue consideration to the signed remonstrance. It should be remembered that about the same number of persons owning land in the same vicinity on Broadway favored the granting of the application and earnestly desired that all of said Residence B district be zoned for business. However, such considerations are of

minor importance. Public notice of the hearing of an application for exception to the provisions of a zoning ordinance is not given for the purpose of polling the neighborhood on the question involved but to give interested persons an opportunity to present facts from which the Board may determine whether the particular provision of the ordinance, as applied to the applicant's property, is reasonably necessary for the protection of public safety, public health, public morals or the general ·welfare in the proper sense. The Board should base their determination upon facts which they find to have been established instead of upon the wishes of persons who appear for or against the granting of the application. In *State of Washington* v. *Roberge, supra,* it was held that a provision of an ordinance, which permitted the erection of a home for aged poor only after procuring the consent of two-thirds of the persons owning real estate within 400 feet of the proposed building, was an unwarranted delegation of power to other property owners to arbitrarily prevent the use of land for purposes desired and was for that reason violative of the due process clause of the 14th Amendment. To the same effect see *Yick Wo* v. *Hopkins,* 118 U. S. 356.

It was suggested by counsel that the Board, having viewed the section of Broadway in question, may have based their determination upon some information known only to themselves. In *Heffernan* v. *Zoning Board of Review,* 50 R. I. 26, p. 31, it is stated that: "As to matters affecting the applicant's interests, which are not well known and apparent, they should not, in fairness to the applicant, be acted upon by the Board without giving the applicant an opportunity to be heard thereon." If boards base their determination upon facts known only to themselves, and hence not brought upon the record, it will be impossible to review intelligently their finding; and it will be necessary for us to hear the case *de novo* when it comes before us for review.

It is ordered that the decision of the Board of Review be reversed. It is the duty of the Board, requiring such safe-

guards as may be reasonably necessary, if any, to grant the petitioner's application. It is ordered that a copy of this opinion be transmitted to said Board.

*Walter I. Sundlun, Baker & Spicer,* for petitioner.
*Woolley & Blais, Clarence N. Woolley,* for respondent.