BENJAMIN J. ROBERTS *vs.* ZONING BOARD OF REVIEW OF THE CITY OF PAWTUCKET.

MARCH 3, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J.   This is a proceeding begun by a petition for a writ of *certiorari* to review a decision of the respondent board refusing the petitioner's application for permission to erect a large gasoline-filling and service station on a vacant lot of land belonging to him in the city of Pawtucket.   The writ was issued to the board, and its records relating to the hearing and refusal of the application are now before us.

The petitioner's lot is located at the southwesterly corner of the intersection of Armistice Boulevard and Rosemont

avenue, the former of which runs about east and west and is used as a main thoroughfare from Pawtucket to Slater Park and Newport avenue. This boulevard is eighty feet wide between curbs and has in the center a safety zone six feet wide, with openings at intervals to permit vehicles to pass from each side of it to the other.

The lot in question and the land for a considerable distance in all directions from it are in a district that by the city zoning ordinance has been zoned as a "residence B" district, in which a gasoline filling station may be erected only with the approval of the board of review under the ordinance.

On the north side of the boulevard, about five hundred feet west of the petitioner's lot was a gasoline filling station, which had been there before the zoning ordinance took effect in 1928. On the boulevard about a thousand feet west of his lot was a mill; about one hundred fifty feet east of his lot was a store; and about a thousand feet further east, at the corner of the boulevard and Newport avenue, were a number of stores and other buildings used for business purposes. Practically all the other buildings in the district, of which there were many, were one-family homes and a few two-family homes.

In his application to the board filed on November 19, 1936, the only grounds, which the petitioner stated for the granting of the application were that the boulevard was a main thoroughfare used extensively by vehicles, and that the zoning of his lot for residence purposes deprived him "of his right to appropriate the land to an income bearing use." He stated therein that he had owned the premises for eight years. For this to be correct, he must have acquired them on or about November 19, 1928.

The land records of the city proved however that the deed to him of the property was dated June 14, 1932, which was more than four years after the adoption and taking effect of the zoning ordinance, by which no building or premises

could legally be used, and no building or structure could legally be erected for use, as a gasoline filling station unless approved by the board. In view of these facts, when the petitioner acquired his property he was charged with notice that he could not legally erect a gasoline filling station on the property, unless he obtained the approval of the board.

He would have been in a stronger position, in pressing his application, if he had acquired the property before the zoning ordinance was adopted, as a good location for a filling station and with the intention of using it later for that purpose. As he acquired it so much later, it seems to us that he is hardly justified in claiming that the zoning of his lot for residence purposes deprived him of any right.

He said in his application that this deprived him of his right "to appropriate the land to an income bearing use." But the testimony of his own son before the board showed that they had considered building a house on the property and had abandoned the idea because that piece of land could be "put to the best advantage" by erecting a filling station on it. There were many residences in the near vicinity, one of them having been recently built on an adjoining lot by one who had bought the lot from the petitioner. Evidently the petitioner's remaining property was also suitable for the residence purposes for which the district was zoned.

At the hearing before the board the owner of that adjoining house testified that the petitioner, before selling the lot to him, promised not to build a filling station on the remaining lot or to sell it to any person who would do so. That tended to prove that the petitioner then had no intention of using that remaining lot for such a purpose and realized that such a use of it would be annoying to residents nearby and seriously detrimental to the value of property in the vicinity for residential purposes.

Five other owner-residents of houses in the vicinity testified that such a use of the petitioner's property would

have such effects. This was contradicted by a real estate expert, who testified for the petitioner, and even stated that in his opinion such a building as the petitioner proposed to erect on his property would increase the value of property in the vicinity. The weight to be given to the testimony of the different witnesses was primarily for the board to determine and we must assume that the preponderance of the evidence was in accordance with the final decision of the board, unless we are clearly convinced to the contrary. We are not thus convinced in the instant case.

The petitioner, in seeking to have the decision of the board quashed, seems to rely mainly on the opinion of this court in *Sundlun* v. *Zoning Board of Review*, 50 R. I. 108, 145 A. 451. In that case the same ordinance was involved and the action under review on *certiorari* was a denial by the board of an application for the approval of a filling station. The features which distinguish that case from the instant one are, however, obvious. Among them are these.

In that case the board had heard no sworn testimony, while in the instant case there was considerable testimony, all given under oath. Although in that case the petitioner's lot on which he wished to erect the filling station was in a residence B district, it was very close to a business district and this court said that it was satisfied that the section in which the lot was situated was "no longer a desirable residential section and that the building of a one or two family house on the petitioner's land would result in a financial loss." Clearly the court was convinced that unless his application was approved he would be deprived by the zoning ordinance of all beneficial use of his land.

These special features of that case clearly prevent it from being a precedent in favor of the petitioner in the instant case; and indeed the inferences from much of the language of the opinion are strongly against him. At page 114 (145 A. 454) the court quotes with obvious approval the following statement from its opinion in *Heffernan* v.

*Zoning Board,* 50 R. I. 26, 144 A. 674: "We have held that when in the circumstances of a particular case the application of an ordinance completely deprived a landowner of all beneficial use of his land, that condition presented such elements of special and great hardship as would require that a zoning board should exercise its discretion to prevent complete confiscation of the applicant's land without compensation."

The zoning board's decision which is under review in the instant case contains the following finding: "The Zoning Board of Review after hearing the testimony and viewing the property finds that the applicant has not shown by testimony or argument that he will be subjected to special or great hardship unless allowed to use the property for other than a residential use."

The petitioner contends, in substance, that this finding showed that the board denied the application because it was of the opinion that it had no right to grant it, unless the petitioner showed "that he would otherwise be subjected to special or great hardship"; and that this erroneous view of the law rendered its decision void. But the contention is not sound, since the natural conclusion from the board's decision as a whole is that in its language above quoted it was simply finding against the *presence* of the elements which this court had held, as shown by the language above quoted from *Heffernan* v. *Zoning Board, supra,* would require the board to *grant* such a petition. This is far from saying that the *absence* of these elements would require the board to *deny* this petition. No erroneous view by the board, of the law applicable to the question before it, was shown.

The board found also "that the property is in fact residential" and that to allow a gasoline station on the petitioner's property "would depreciate the values of the properties in that vicinity"; and it decided that to allow such a station at that corner would be an abuse of its discretionary power; and therefore it denied the petition.

In *Sundlun* v. *Zoning Board of Review, supra,* at page 116, (455), this court said: "We hesitate to set aside the determination of public officers in a case of this nature, and it would be improper to do so unless it is clear that their action 'has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense.' *Nectow* v. *City of Cambridge,* 260 Mass. 441, 157 N. E. 618; . . . ."

We are of the opinion that there was no abuse of discretion by the respondent board in making the decision which is now before us for review.

The petition for certiorari is denied and dismissed; the decision of the respondent board is affirmed; and the papers in the case are ordered to be sent back to the respondent board.

*Henry E. Crowe, Thomas Hetherington,* for petitioner.

*John A. O'Neill,* City Solicitor, for respondent.