## HARRINGTON v. BOARD OF ADJUSTMENT OF CITY OF ALAMO HEIGHTS, BEXAR COUNTY, et al.
### No. 4958.

Court of Civil Appeals of Texas. Amarillo.

Jan. 9, 1939.

Rehearing Denied Feb. 6, 1939.

**402**

Leo Brewer and Samuel Peterson, both of San Antonio, for appellant.

Ralph E. Cadwallader, Terrell, Davis, Hall & Clemens, A. V. Knight, and Theo F. Weiss, all of San Antonio, for appellees.

STOKES, Justice.

On the 14th of September, 1928, the City of Alamo Heights, an independent suburb of San Antonio, by proper ordinance of its city council, enacted a comprehensive zoning plan under Chapter 283 of the Acts of the Fortieth Legislature, Arts. 1011a to 1011j, Vernon's Annotated Civil Statutes, whereby the entire city was divided into zones or districts. Five small business districts were established and the balance of the city extending to the corporate limits was designated as district No. 10 and made exclusively a residence district. It was provided that no business building whatsoever should be constructed and no business enterprise operated in residence district No. 10 unless thereafter specifically authorized and permitted by alterations of, or exceptions to, the regulations so enacted and unless they were made and operated in conformity to the provisions of the city zoning law. It was provided that whenever any person should desire to erect a business building or establish any lawful business in the city, an application for a permit therefor should be filed with the city secretary showing the exact character, materials and location of the building. The ordinance provided that it should be unlawful for any person to erect in the city elsewhere than in a regularly designated business district any building more than two stories in height, exclusive of basement and attic, or to erect any building in the city in violation of the restrictions established for the subdivision concerned.

On the 8th of May, 1936, an ordinance was passed by the city council creating a board of adjustment with numerous powers relating to the zoning ordinance, among which was Sec. 6. That section provided that: "In pursuance of the power granted in the preceding section, the board of adjustment may permit: * * * (f) business buildings and uses in district No. 10 on any lots so situated that no residential use can be made thereof without loss to the owner; provided, however, that such permit shall contain such restrictions on the building to be erected on, and the use to be made of, any such lot as to prevent, in the opinion of the board of adjustment, any damage thereby to the value of other property in that vicinity."

On July 30, 1937, the board of adjustment granted the application of R. D. Jones, who will be designated as intervenor, for a special exception to the terms of the zoning ordinance so as to permit the erection of a gasoline filling station at the southwest corner of the intersection of Broadway and Joliet Avenue upon the east portion of lot No. 4, in block No. 33, which is located in district No. 10, the district designated by the city council in the zon-

ing ordinance as a residence district. The petition was granted after due notice and a hearing before the board as provided by the statute and the ordinance.. At the hearing before the board a number of residents of the city appeared in person and others by their attorneys and letters written to the members of the board, some of them ob-, jecting and others consenting to the granting of the application.

After the application was granted, appellant, John H. Harrington, appealed by certiorari to the district court and, in answer to the writ, the board made its return to the court by filing a certified copy of all papers and a transcript of all proceedings had before the board, and also filed an answer to the petition consisting of general and special exceptions, general denial, and affirmative matter not necessary to state, concluding with a prayer that the decision of the board granting the application be affirmed. Intervenor, R. D. Jones, filed a plea in intervention in substantial accord with the answer of the board.

A hearing was had before the court without the intervention of a jury on October 11, 1937. No evidence was introduced except a map of the city, a certified copy of the zoning ordinance, with its amendments, and the return made by the board in this suit and in a companion suit involving the same questions of law and fact. The transcript contained a statement of the facts that were heard by the board.

The trial court rendered judgment affirming the decision of the board and appellant duly excepted, gave notice of appeal, and presents the case in this court upon nine propositions of law, duly supported by a like number of assignments of error.

The controlling issue in the case relates to the power and authority of the board of adjustment to grant the special exception applied for by intervenor, appellant contending that no such power is delegated, either by the statute or the ordinance, and appellee and intervenor contending that both the statute and ordinance extend to the board ample authority and power to perform the function that was exercised by its members in granting the application.

An examination of Art. 1011g, Vernon's C.S., will reveal the powers given to the board of adjustment by the statute. They are three in number, the first referring to appeals which are not involved here. The second and third designations are as follows:

"2. To hear and decide special exceptions to the terms of the ordinance upon which such board is required to pass under such ordinance.

"3. To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done."

It will be observed that Subd. 2 refers to "special exceptions", while Subd. 3 refers to "variances". We shall first consider the variances quoted provided by Subd. 3. The board is permitted to make variances from the ordinance provided they are not contrary to the public interest and, due to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship. As we view the statute, there is an essential difference between the provision for special exceptions and the provision for variances. The latter means that substantially the same thing shall be done by the board as that which is provided by the ordinance but relieves the enacted provision of its rigidity in specific cases wherein a literal, a rigid, an absolute toe-the-mark interpretation would work unnecessary hardship. By giving to the board the power of variance from the ordinance, it was not intended the board should be permitted to perform an act or grant a privilege that would be in conflict with the provisions of the ordinance. That, in effect, would be to destroy the ordinance and substitute for its provisions those enacted by the board. This is evident not only from the term used and its proper definition but also by the provisions of the statute immediately following it, viz.: " * * * and so that the spirit of the ordinance shall be observed and substantial justice done." If the board had power to grant the application of intervenor, that power certainly did not come from Subd. 3 of the statute providing for variances. Under our conception of that term, the board's action could not constitute a mere variance. It could not be said that, to establish a gasoline filling station in district No. 10, a district set apart by the ordi-

nance exclusively as a residence district, would be substantially the same thing as that which is provided by the ordinance. It would extend beyond the injection of flexibility into the ordinance. It would amount, in both substance and form, to the creation of a sixth business district composed of intervenor's property at the corner of the intersection of Broadway and Joliet Avenue. No such business district was created by the ordinance. On the other hand, the ordinance provides for only five business districts and specifically designates them on the map. Could it be said that, to create a sixth such district, is substantially the same thing that was done by the city council in establishing the zoning scheme which provided for only five business districts? Would it be in harmony with the spirit and purpose of an ordinance which loudly proclaims that the business districts of the city shall be five in number? We think not. It would, in effect, not only destroy the spirit and purpose of the ordinance, but its very terms and provisions as well. That such an act of the board would be legislation enacted by it is too plain to admit of argument. The board is not permitted to enact legislation. That is the function of the city council and it cannot be usurped by, nor delegated to the board of adjustment. City of Amarillo v. Stapf, 129 Tex. 81, 101 S. W.2d 229; State ex rel. Nigro v. Kansas City, 325 Mo. 95, 27 S.W.2d 1030.

■ Having concluded that the board did not have power to grant the permit upon the theory that it was a "variance", we shall now examine the provisions of Subd. 2 of the statute and Subd. (f) of the ordinance to see if it could be granted under the theory that it was a "special exception" as provided by those subdivisions. The statute (Subd. 2, Art. 1011g, Vernon's Ann.Civ.St.) provides that the board shall have power to hear and decide special exceptions to the terms of the ordinance *upon which such board is required to pass under such ordinance.*

Subd. (f) of Sec. 6 of the ordinance provides that the board may permit business buildings and uses in district No. 10 on any lots so situated that no residential use can be made thereof without loss to the owner. In order for the permit of intervenor to come under the special exceptions contemplated in Subd. 2 of the statute, it must be one upon which the board is required to pass under the pro-

visions of the ordinance. Moreover, the action of the board in passing upon it must be in harmony with the general purpose and intent of the ordinance and in accordance with the rules therein contained. The statute so provides. If the action of the board in granting the permit to intervenor was in harmony with the general purpose and intent of the ordinance and in accordance with the rules therein contained, then its action in granting the permit should not be disturbed. An inspection of the entire ordinance will reveal the spirit and purpose which actuated the city council in adopting it and also the rules which they enacted for the conduct of the board in passing upon such matters. For instance, Sec. 3 of the ordinance has reference to "forbidden businesses". It enumerates thirty-eight different kinds of businesses that are absolutely forbidden in any portion of the city. Among them are insane asylums, dance halls, cotton gins, blacksmith shops, cement plants or factories, or any manufacturing establishment of any character, the conduct of which, in the opinion of the city council, may prove injurious to the health, safety, morals, comfort, good order or general welfare of the inhabitants of the district or neighborhood concerned in the enjoyment of their homes and the use of their property; "provided, public garages, repair shops for motor vehicles, *gasoline or oil filling stations,* and dyeing and cleaning establishments may be permitted in any of said business districts *but not in said residence district."* It is conclusive, we think, that when the legislative body of the city fixed the status of gasoline filling stations in the same breath in which it dealt with those classes of business that were forbidden, and treated of them in the same section and paragraph, and affixed to such status the modifying provision above quoted, it was the purpose and intention of the city council to exclude gasoline filling stations in all of the respects in which the other enumerated businesses were excluded, except only to the extent that they should be permitted in the business districts of the city. This necessarily means that, under no circumstances, should a gasoline filling station be permitted in residence district No. 10 or any portion of it.

In the subdivision of Sec. 2 of the ordinance which creates district No. 10, it is provided that no business building whatsoever shall be constructed and no business enterprise shall be operated in district No.

10—"unless hereafter specially authorized and permitted by alteration of, or exceptions to these regulations made in conformity with the provisions of said city zoning law and this ordinance."

Appellees observe that when the city commission adopted the ordinance of May 8, 1936, in which the board of adjustment was created, authority was given the board to make special exceptions to the terms of the ordinance, one of which was Subd. (f) of Sec. 6 above quoted, which authorizes business uses and buildings in the residence district on any lot so situated that no residential use can be made of it without loss to the owner. They urge that this provision applies to a gasoline filling station such as intervenor desires to establish and that, although gasoline filling stations are treated in section No. 3, dealing with "forbidden businesses", obviously, they say, the provision of Sec. 2, with reference to the establishment of business enterprises in district No. 10 and the portion of Sec. 3 dealing with forbidden businesses which specifically treats of gasoline filling stations are subject to the right of the board of adjustment to grant special exceptions and permit the establishment of business buildings and also gasoline filling stations in district No. 10 where it appears that no residential use of the lot can be made without loss to the owner.

As we understand this contention, it is that, although in the closing paragraph of Sec. 3 dealing with "forbidden businesses", the ordinance specifically provides that gasoline filling stations may be permitted in any of the business districts but not in the residence district, the board has power to permit their establishment in the residence district No. 10 under the provisions of the closing paragraph of Sec. 2 which provides, in effect, that business enterprises may be established and conducted in district No. 10 if specially authorized and permitted by alterations of, or exceptions to, the regulations made by the ordinance and zoning statute and it appears that no residential use can be made of the lots without loss to the owner.

We cannot assent to this contention. The positive terms of the ordinance to the effect that gasoline filling stations may be established in any of the business districts but not in the residence district, admits of no qualification whatever. Gasoline filling stations are, by the legislative body of the city, placed in the class of "forbidden businesses". They are dealt with in the same paragraph and are forbidden in the residence district under the same positive terms as insane asylums, dance halls, livery stables, dairies, and all of the other thirty-eight enumerated kinds of business are prohibited throughout the city. If appellees' reasoning is sound to the effect that the board of adjustment has authority to make special exceptions of filling stations, then it must follow that the same reasoning would be sound if applied to the businesses which are absolutely prohibited throughout the city. Most, if not all, of the thirty-eight kinds of businesses enumerated in the ordinance require buildings for their operation. The closing clause of Sec. 2 provides that no business enterprise shall be established or operated in district No. 10 unless specially authorized and permitted by alterations or exceptions to the ordinance. Could it be said that, under this provision of Sec. 2, the board of adjustment has power and authority to make exceptions to those businesses enumerated in Sec. 3 which are absolutely forbidden by the ordinance to be established anywhere in the city? We think not. Such an act on the part of the board of adjustment would nullify the ordinance in respect to the forbidden business which the board should permit. If such could be done with respect to one of the forbidden businesses, it could be done with respect to all of them and thus the entire Sec. 3 of the ordinance be completely blotted out and all of those businesses designated by the legislative body of the city as being undesirable and absolutely forbidden could thus by the board be permitted freely to enter and establish themselves in any portion of the city. The ultimate effect of such a course would be to thwart and completely destroy the power and authority given by the enabling act of the Legislature to the city council as the legislative body of the city.

█ There is nothing in the record to indicate the board was not actuated by good faith nor that it was lacking in sincerity when it granted the special exception to intervenor. Indeed, its members, no doubt, believed their action was in keeping with, and warranted by, the changed conditions inaugurated by the advent, since the adoption of the zoning plan, of the state highway which seems to have been routed through the city of Alamo Heights and chosen Broadway as its course of entrance to San Antonio. This is evidenced by the finding of the board to the effect that the

district on Broadway lying between Austin and Terrell roads, is now at least semi-business property. The trial court found this expression to be surplusage and so it probably is, but it reveals the conception entertained by the members of the board of their prerogatives in granting special exceptions under the terms of the ordinance. It was not intended by the Legislature to give to the city council power to delegate its authority, nor could it have been the purpose of the city council in creating the board to cast itself into the role of a Frankenstein. If we should hold with the contention of appellees that the power of the board is such as to enable it to change the zoning map and create business districts beyond those designated and established by the city council, a serious constitutional question would immediately arise. Neither the Legislature nor the city council has authority to delegate legislative power to the board of adjustment. That the establishment of business and residence districts and creating restrictions as to buildings, enterprises and uses within such districts is legislative in its nature cannot be questioned. Indeed, that is the very purpose of the zoning law. In adopting the ordinance of May 8, 1936, in which the board of adjustment was established, the city council adhered closely to the provisions of the statute in reference to the authority and powers which it granted. They are included in Sec. 6 of the ordinance under sub-sections (a) to (f), inclusive, and specify in explicit terms the powers which the city council granted to the board under subsection 2 of the statute (Art. 1011g). We again quote that subsection as follows: "To hear and decide special exceptions to the terms of the ordinance upon which such board is required to pass under such ordinance." The statute demands an ordinance which limits those things upon which the board may pass and, in compliance with that demand, the city council placed such limitation within subsections (a) to (f). Unless, therefore, the special exception applied for comes within one of those enumerated in the ordinance, the board is without authority to grant it. The board and the trial court were of the opinion that power was contained in subsection (f) to grant the application of intervenor in this case. With those conclusions we cannot agree. The map of the city accompanying the record reveals a dozen or more lots on the west side of Broadway, including intervenor's premises, and a large number on the east side, all of which are within district

No. 10. Each of these lots is of sufficient size to accommodate a residence for a family and they are located between two separate and distinct business districts designated by the ordinance. If the board of adjustment has power under the ordinance and the statute to grant a special exception to intervenor and permit him to establish a gasoline filling station on his lot, then it cannot be questioned that it would have equal authority to grant special exceptions to the owners of each of these premises and thus establish by piecemeal a business district along Broadway which would be more extensive than any other business district established by the zoning ordinance. Thus the entire aspect of the zoning plan laid out by the city council under authority of the statute would be changed by the board and the original purpose, spirit and intention of the local legislative body would be completely thwarted.

Counsel has not cited us to any decision of the courts of this state wherein the question here involved has been decided nor have we been able to find any. Our zoning statute is in substantial accord with those adopted by many other states in the Union and the ordinance adopted by the city of Alamo Heights is largely in keeping with like enactments of many cities and municipalities in other states. Interpretations of the courts of those states, therefore, carry more than ordinary weight in considerations and interpretations of our own statute under similar fact conditions.

In the case of Levy v. Board of Standards and Appeals, 267 N.Y. 347, 196 N.E. 284, 286, the owner of a vacant lot applied to the Board of Standards and Appeals for permission to erect and maintain a gasoline service station thereon. Under the restrictions imposed by the zoning ordinance no gasoline service station could be erected or maintained there. The board, after a hearing and personal inspection of the premises, granted the application for a variance from the general restrictions. In the course of the opinion by the New York Court of Appeals it is said: "The power to grant in a specific case a variation or dispensation from a provision of a zoning ordinance is subject to express limitations and to limitations clearly implicit in the ordinance. No power has been conferred upon the Board of Standards and Appeals to review the legislative general rules regulating the use of land. Dowsey v. Vil-

lage of Kensington, supra [257 N.Y. 221, 177 N.E. 427, 86 A.L.R. 642]. The board does not exercise legislative powers. It may not determine what restrictions should be imposed upon property in a particular district. It may not review the legislative general rules regulating the use of land. It may not amend such general rules or change the boundaries of the districts where they are applicable. Its function is primarily administrative. * * *"

Further on in the opinion, the court says:

"It may not destroy the general restriction by piecemeal exemption of pieces of land equally subject to the hardship created in the restriction, nor arbitrarily grant to an individual a special privilege denied to others.

"Relief from general rules which are shown to be unwise by experience or change of conditions must be through appeal to the legislative authority, or in extreme cases, where the rule has become confiscatory, by challenge in the courts to the continued validity of the rule. Municipal Gas Co. of City of Albany v. Public Service Commission, Second District, 225 N.Y. 89, 121 N.E. 772; Abie State Bank v. Weaver, 282 U.S. 765, 51 S.Ct. 252, 75 L.Ed. 690. There can be no relief in such case by appeal to an administrative board vested with limited powers."

In the case of Norcross et al. v. Board of Appeal of Building Department, 255 Mass. 177, 150 N.E. 887, 890, one Stober owned a lot in Boston and applied to the commissioner of buildings for a permit to erect thereon a hotel to the height of 155 feet. The application was refused because the limit of height permitted by the zoning law of the city for buildings on that lot was less than 155 feet. In discussing the case on appeal, the Supreme Judicial Court of Massachusetts said: "It is manifest from the tenor of the zoning act as a whole, as well as from section 19, that the power of authorizing variations from the general provisions of the statute is designed to be sparingly exercised. It is only in rare instances and under exceptional circumstances that relaxation of the general restrictions established by the statute ought to be permitted. The power granted is only for the relief of specific instances, peculiar in their nature. It does not extend to modifications or changes of essential particulars of the scheme of the zoning act. It does not include immediate

or prospective changes in boundary lines of districts. That power is reserved within narrow limits to the board of zoning adjustment under section 20 of said chapter 488. The chief purpose of a zoning statute has relation to the public welfare. The protection of health and safety are important factors. The preservation of the property of others in the neighborhood growing out of established restrictions is a matter of importance. These and numerous other considerations must be weighed in passing upon any appeal."

In the case of Livingston v. Peterson, Building Inspector, 59 N.D. 104, 228 N.W. 816, 819, the petitioner owned some lots within a residential district as defined by the ordinance. She desired to erect an apartment house thereon and applied to the building inspector for a permit. The erection of an apartment house within such district was forbidden by the ordinance. The building inspector denied the permit and the petitioner appealed to the board of adjustment which sustained the action of the building inspector. Upon a hearing in the district court the action of the building inspector and the board were reviewed and judgment entered, requiring the building inspector to issue the permit. From this order of the district court the respondents appealed. In discussing the issues, the Supreme Court of North Dakota said: "To permit a board or committee appointed by the city commission to say that a building forbidden to be erected may be erected, if this committee deem it wise, is as much a delegation of legislative power as would be permitting property owners to say that certain improvements must be made, or cannot be made. In either case the legislation would be made by those outside the legislative body. See Morton v. Holes, 17 N.D. 154, 158, 115 N.W. 256; State of Washington ex rel. Seattle Title Trust Co. v. Roberge, 278 U.S. 116, 49 S.Ct. 50, 73 L.Ed. 210 [86 A.L.R. 654]. The ordinance must determine this matter, and not the board. For this reason it is clear that, where the board is given power to vary regulations, so as to apply them in harmony with the general purpose and intent of the ordinance and the law, it merely refers to regulations such as the distance which a church or school may be built from the rear of the lot, whether living, sleeping, or working rooms may be ventilated by an approved mechanical system, rather than by windows, whether churches or hospitals may exceed height restrictions

of the district, and other provisions found in sections 9 and 10 of the ordinance. It cannot be extended to permit the building inspector or the board of adjustment to amend the ordinance, so as to authorize the erection of a building which is forbidden by the ordinance."

In discussing a similar question of law the Supreme Court of the United States, in State of Washington, etc., v. Roberge, Superintendent of Building, 278 U.S. 116, 49 S.Ct. 50, 52, 73 L.Ed. 210, 86 A.L.R. 654, said: "The section purports to give the owners of less than one-half the land within 400 feet of the proposed building authority—uncontrolled by any standard or rule prescribed by legislative action—to prevent the trustee from using its land for the proposed home. The superintendent is bound by the decision or inaction of such owners. There is no provision for review under the ordinance; their failure to give consent is final. They are not bound by any official duty, but are free to withhold consent for selfish reasons or arbitrarily and may subject the trustee to their will or caprice. Yick Wo v. Hopkins, 118 U. S. 356, 366, 368, 6 S.Ct. 1064, 30 L.Ed. 220. The delegation of power so attempted is repugnant to the due process clause of the Fourteenth Amendment."

In Anderson et al. v. Jester et al., 206 Iowa 452, 221 N.W. 354, 358, the Supreme Court of Iowa said: "But the statute does not, by language or inference, confer arbitrary power upon the board. On the contrary, it lays down conditions and limitations within which the board must confine itself. The power of the board is to grant such exceptions and variances in specific cases as will bring them within, not to take or leave them out, of the spirit, intent, and general purpose of the ordinance of zoning."

Other cases could be cited which announce the same doctrine, but we think those from which quotations have been made are sufficient to show the trend of construction and that the courts of last resort in other jurisdictions adhere to the interpretation we have expressed when they have been called upon to consider statutes similar to ours. In referring to these cases appellees suggest in their brief that most, if not all, of the cited cases designate as "variances" the power with which they deal. While that is true in some of them,

yet in none of them is a distinction drawn between "variances" and "special exceptions" as made by our statute and the language and reasoning employed demonstrate plainly that the considerations and holdings have reference to power and authority identical with that which was assumed by the Board of Adjustment in this case, by whatever term it may be designated. We have found no case which adheres to a view contrary to those expressed on the specific questions here involved. Those which seem to do so rest upon different bases. Either the special exception approved by them was not considered legislative in its nature, or was lawfully permitted by the ordinance or the statutory provisions were not identical with ours. Of such are the cases of Lambert et al. v. Board of Appeals of City of Lowell, Mass., 3 N.E.2d 784; Sundlun v. Zoning Board of Review, 50 R.I. 108, 145 A. 451; McCord v. Ed Bond & Condon Co., 175 Ga. 667, 165 S.E. 590, 86 A.L.R. 703.

The questions we have discussed are raised under appellant's first, second, eighth and ninth assignments of error and propositions of law and the conclusions we have reached make it unnecessary specifically to discuss the remaining assignments of error. It is plain, we think, that the board of adjustment did not possess authority nor have jurisdiction to grant the application of the intervenor, R. D. Jones, to erect a gasoline filling station at the southwest corner of the intersection of Broadway and Joliet Avenue, and their action in doing so was void. If the original zoning plan of the city is to be thus altered, the legislative body of the city is the only authority through which such a change can be made, and if conditions exist or have so changed since the enactment of the ordinance as to make its provisions unreasonable or confiscatory, intervenor has his remedy through the courts.

From what we have said it is apparent that in our opinion the trial court erred in sustaining the action of the board of adjustment and that the error requires a reversal of the case. It appears from the record the case was fully developed and no purpose could be served by another trial. The judgment of the trial court is, therefore, reversed and judgment will be here rendered for appellant in accordance with the holdings in this opinion.