The BOARD OF ADJUSTMENT OF the CITY OF SAN ANTONIO, Texas, Appellant,

v.

David WILLIE et al., Appellees.

No. 15309.

Court of Civil Appeals of Texas, San Antonio.

June 19, 1974.

Rehearing Denied July 17, 1974.

Foster, Lewis, Langley, Gardner & Banack, Jake N. Talley, Jr., William T. Armstrong, San Antonio, for appellant.

Barry Snell, San Antonio, for appellees.

BARROW, Chief Justice.

The Board of Adjustment of the City of San Antonio has perfected its appeal from a summary judgment granted David Willie and three other residents which reversed and held for naught a height variance granted by appellant pursuant to a request by the owners of a lot in said City.

The owners of a lot located at the northeast corner of Loop 410 and McCullough Avenue requested a variance to allow construction of a building up to 100 feet in height rather than the 35 foot maximum building height allowed under Section 42–55 of the City Code of San Antonio. The property is zoned "F local retail" district, and the Code restricts the height of buildings in such zone to two and a half stories or 35 feet. The Code authorizes a height of eight stories or 100 feet for buildings in "H local retail" districts. The permitted uses are the same in "F, G and H local re-

tail" zones, but different height and off-set restrictions apply to each of said zones.[1]

The Board granted said variance after a full hearing wherein the property owners presented favorable evidence and numerous residents of the residential area just north of the lot in question testified in opposition to the proposed multi-storied building. The Board did require that certain architectural recommendations be incorporated in the structure as constructed so as to cause the least amount of interference with adjoining properties. Four residents timely filed a petition for writ of certiorari to the district court to review such decision of the Board pursuant to Article 1011g, Vernon's Tex.Rev.Civ.Stat.Ann.

A transcript of the proceedings before the Board was filed in said cause along with a stipulation of the applicable provisions of the City Code. Both parties moved for summary judgment based on this record. The trial court concluded that the decision of the Board was supported by substantial evidence, but that the variance granted is so extensive as to constitute in substance a rezoning of the property which exceeds the authority of the Board and usurps the function of the City Council. It, therefore, granted the residents' motion for summary judgment to set aside the variance.

Appellant Board asserts herein that the trial court erred in granting appellees' motion for summary judgment in that the Board's granting of the variance was within its authorized power, and that the trial court erred in not granting Board's motion for summary judgment in that there was substantial evidence to support the Board's decision. Appellees urge in reply that the summary judgment was properly granted, and further, that appellees were denied due process in that they were not permitted to cross-examine the witnesses presented by the property owners.

Article 1011g, permits cities to establish Boards of Adjustment and defines the

---

1. A building in a "G local retail" district is restricted to a height of three stories or 45 feet.

powers of such a board. The Board is specifically granted the power to "authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done." Article 1011g, subd. 3, supra.

The Code of the City of San Antonio has created a Board of Adjustment and by Section 42–45.8 thereof the Board is given the power to grant variances "where a literal enforcement of the provisions of this chapter (zoning chapter) will result in unnecessary hardship." However, such power to grant a variance is specifically limited as follows:

"(a) Such variance will not be contrary to public interest.

(b) Such variance will not authorize the operation of a use other than those uses specifically authorized for the district in which the property for which the variance is sought is located.

(c) Such variance will not substantially or permanently injure the appropriate use of adjacent conforming property in the same district.

(d) Such variance will not alter the essential character of the district in which it is located the property for which the variance is sought.

(e) Such variance will be in harmony with the spirit and purposes of this chapter.

(f) The plight of the owner of the property for which the variance is sought is due to unique circumstances existing on the property, and *the unique circumstances* were not created by the owner of the property *and are not merely financial,* and are not due to or the result of general conditions in the district in which the property is located. (Emphasis ours)

(g) The variance will not substantially weaken the general purposes of this chapter or the regulations herein established for the specific district.

(h) The variance will not adversely affect the public health, safety or welfare of the public.

▇▇ A Board of Adjustment acts as a quasi-judicial body, having no statutory power to legislate. It is restricted in its decisions to the powers vested in it by the legislature and city council. It may not materially alter the specific intent and extent of the zoning ordinance as this power is within the province of the city council. Swain v. Board of Adjustment of University Park, 433 S.W.2d 727 (Tex.Civ.App. —Dallas 1968, writ ref'd n. r. e.) ; Baylor University: Goodwin, Recent Decisions, 1 Baylor L.Rev. 228 (1948) ; Sw. Legal Foundation, Institute on Planning and Zoning, 69, 83 (1962).

▇ It is seen that under the Texas statute and the San Antonio City Code, the Board's power to grant a variance is expressly limited by the words "unnecessary hardship." The principal question on this appeal is whether there is substantial evidence to support a finding that a variance in the height limitations of this "F local retail" district is required to avoid an unnecessary hardship to the owners of this lot.

The Board did not make a specific finding of unnecessary hardship. Rather, it found that the unique characteristics of the subject property, such as the higher ground elevation as compared to the surrounding properties, frontage on a one-way access road of the expressway and a relatively shallow depth (441 feet) in comparison with the approximately 1,500 feet of frontage, creates a situation where development by a single developer under one master plan will allow the property to be utilized

to its highest and best use. This finding is based on the testimony of the developer's architect and the realtor who handled the transaction between owners and the developer. The essence of their testimony in support of a finding of "unnecessary hardship" is that a multi-storied building for use as an office building or motor hotel would be the highest and best use of this very valuable commercial property in that by going up you spread the costs of the land. Otherwise, the property could only be used for food service centers, filling stations, discount stores or franchises. These witnesses also testified that a multi-storied building would not be contrary to the public interest and demonstrated how the structure could be designed to minimize the height appearance of the building in relationship to adjoining property.

■ This testimony does not support a finding of "unnecessary hardship" which is required to authorize the granting of a variance. The Code expressly provides that the unique circumstances existing on the property so as to justify granting a variance must be something other than a financial hardship. A variance is not authorized merely to accommodate the highest and best use of the property, but where the zoning ordinance does not permit any reasonable use of such lot. Board of Adjustment v. Stovall, 218 S.W.2d 286 (Tex.Civ. App.—Fort Worth 1949, no writ); Baylor University: Goodwin, Recent Decisions, 1 Baylor L.Rev. 228 (1948); 3 Anderson American Law of Zoning, Variances, Section 14.48 (1968).

■ We, therefore, conclude that the trial court properly set aside and held for naught the order of the Board granting the height variance on the property in question. It is, therefore, unnecessary to consider the effect of the Board's refusal to permit the attorney representing the opposing residents to cross-examine the witnesses for the property owners. Nevertheless, it should be pointed out for future guidance of the Board that while the Board is not bound to apply the strict rules of evidence followed in courts of law, the right to produce relevant evidence and to cross-examine witnesses should be afforded the parties. See Sw. Legal Foundation, Institute on Planning and Zoning, 79 (1962), Parsons v. Zoning Board, 140 Conn. 290, 99 A.2d 149 (1953); 2 Am.Jur.2d, 234, Administrative Law, Section 424; 27 A.L.R. 3d 1304, 1306.

The judgment is affirmed.