# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO.03-03-00263-CV

**Richard Ferris, Appellant**

**v.**

**City of Austin and Board of Adjustment of the City of Austin, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
NO. GN200222, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING**

## O P I N I O N

This case deals with the application of municipal land-use regulations and the judicial deference afforded to the decisions made by administrative bodies to vary the terms of those regulations. Appellee, the City of Austin (ACity@), in its proprietary capacity as developer of certain property in East Austin, sought relief from its own zoning regulations, those governing the size and shape of lots prior to development, so that it could construct between ten and twenty townhomes on property along East 12th Street and Navasota Street in Austin. At a public hearing, appellant Richard Ferris owner of rental property near the proposed development, testified in opposition to the City=s plan. He argued that the neighborhood needed commercial not residential services. After the variances were granted by the City=s Board of Adjustment (ABoard@), Ferris sought review of the Board=s decision in district court, which affirmed the Board=s decision by summary judgment. We now affirm the district court=s judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

On January 14, 1999, the City of Austin (ACity@) approved the Urban Renewal Plan (AURP@). Austin, Tex., Code of Ordinances No. 990114-G (1999). The URP targeted property along East 11th and 12th Streets in Austin for redevelopment and renovation. *Id.* Specifically, property located at 1101-1111 East 12th Street, and 1190-1196 Navasota Street (hereinafter Athe property@) was earmarked for townhome development. Originally, the City planned to build between thirty and thirty-six new townhomes but later reduced that number to between ten and twenty. Austin, Tex., Code of Ordinances No. 010802-89 (2001). The property was zoned for both commercial and residential uses.[1] All development, whether commercial or residential, had to comply with the lot-size restrictions governing commercial development. Austin, Tex., Code of Ordinances No. 980430-0 (1998).

---

[1] The property consisted of 12 lots zoned ACS-MU-CO.@ ACS@ is the designation for a ACommercial Services District,@ a district allowing Acommercial or industrial use of a service nature that has operating characteristics or traffic service requirements that are incompatible with residential environments.@ Austin, Tex., Land Dev. Code ' 25-2-103 (2003). AMU@ is the designation for AMixed Use.@ *Id*. ' 25-2-172 (2003). Townhomes are a permitted use in a Mixed Use District. *Id*. ' 25-2-646(3) (2003). ACO@ is the designation for a AConditional Overlay,@ which is some modification of the land use regulations so that two competing uses, in this case commercial and residential, could co-exist. *Id*. ' 25-2-164 (2003).

On November 16, 2001, Jerry Freese, on behalf of the City of Austin Neighborhood Housing and Community Development (ANHCD@), asked the Board for an area variance[2] from the zoning requirements governing development of the property. Freese made the following variance requests:

1. A decrease in the minimum lot width under City Code ' 25-2-492(D)[3] from 50 feet to 30 feet;

2. A decrease in the minimum lot size under City Code ' 25-2-492(D)[4] from 5750 square feet to 2500 square feet;

---

[2] A Avariance@ allows a property owner to use land in a manner forbidden by the zoning ordinance. *West Tex. Water Refiners v. S & B Beverage Co.,* 915 S.W.2d 623, 627 (Tex. App.CEl Paso 1996, no writ). An Aarea variance@ allows the property owner to deviate from the strict application of the *terms* of the zoning ordinance involving Asetback lines, frontage requirements, height limitations, lot-size restrictions, density regulations, offstreet parking and yard requirements.@ Robert M. Anderson, *American Law of Zoning 3d* ' 20.07 (1986). Area restrictions govern size not use. *See id.* A Ause variance,@ on the other hand, allows a property owner to seek total relief from the zoning ordinance itself, that is, the *uses* permitted under the ordinance and not just their *terms*, for example, to construct a filling station, beauty store, drive-in theater, or parking lot in an area designated for residential use only. *See id.* ' 20.06; *Swain v. Board of Adjustment of City of Univ. Park*, 433 S.W.2d 727, 732 (Tex. Civ. App.CDallas 1968, writ ref=d n.r.e.) (denying variance where property owner sought to construct a filling station in an area zoned for residential use); *Board of Adjustment v. Levinson*, 244 S.W.2d 281, 282 (Tex. Civ. App.CSan Antonio 1951, no writ) (denying variance where property owner sought to construct beauty store in area zoned for residential use); *Board of Adjustment v. Stovall*, 218 S.W.2d 286, 289 (Tex. Civ. App.CFort Worth 1949, no writ) (denying variance where property owner sought to construct drive-in theater in area zoned for residential uses); *Texas Consol. Theatres, Inc. v. Pittillo*, 204 S.W.2d 396, 399 (Tex. Civ. App.CWaco 1947, no writ) (denying variance where property owner sought to construct parking lot in area zoned for residential uses); *Harrington v. Board of Adjustment*, 124 S.W.2d 401, 408 (Tex. Civ. App.CAmarillo 1939, writ ref=d) (denying variance where property owner sought to construct filling station in area zoned for residential uses). As we discuss below, a board of adjustment may grant a property owner relief from the *terms* of a zoning ordinance but not from the *uses* permitted by the ordinance. *See* Tex. Loc. Gov=t Code Ann. ' 211.009 (West 1999).

[3] The minimum lot width requirement for a Commercial Services District is 50 feet. Austin, Tex., Land Dev. Code ' 25-2-492D (2003).

[4] The minimum lot size for a CS zoning district is 5750 square feet. *Id.*

3

3. A decrease in the minimum site area for a townhouse development under City Code ' 25-2-775(c)[5] from 3600 square feet to 2500 square feet; and

---

[5] The minimum site area for a townhouse is 3600 square feet. *Id*. ' 25-2-775.

4

4.    A decrease in the minimum side street setback under City Code ' 25-2-492(D)[6] from 10 feet to 5 feet.

(collectively, Athe area requirements@).

On December 10, 2001, the Board held a public hearing on the City=s requested variances. Freese testified that his office was working at the direction of the Austin City Council pursuant to the URP. The URP mandated the property be developed for townhome use. The townhomes were to be offered for sale to persons with incomes at or below 80% of the median family income (AMFI@). He said they discovered that the lots were too small and irregularly shaped to comply with the minimum lot-size restrictions. In addition, Freese said the property was burdened by topographical restraints, large oak and pecan trees, slopes, and a home designated a historical site, which interfered with the City=s ability to make reasonable use of the property. He said that without the variances the City would not be able to comply with the URP=s goal of building between ten and fifteen townhomes. He testified that, all told, only one of the twelve total lots along 12th Street and Navasota was currently compatible with townhome use.

Testifying in opposition, appellant, the owner of a sixteen-unit apartment house located at 904 and 906 East 12th Street, argued that the City=s plan to construct townhomes on the property would result in a financial loss to the City and the neighborhood. He also said that the neighbors preferred a grocery store or laundry over townhomes.

---

[6] The minimum side street setback for a CS zoning district is 10 feet. *Id*. ' 25-2-492D.

5

In reply, Freese pointed out that the City already had plans to turn over other property in the area for commercial development but that, as to this property, commercial use would be incompatible with the URP.

The Board unanimously approved the variances and made the following findings:

1. The Zoning regulations applicable to the property do not allow for a reasonable use because: the 11th/12th Street Urban Renewal Plan calls for high density townhouse development with the conditional overlay prohibiting residential driveway access to E. 12th requiring the construction of an alley which reduces available lot depth and size.

2. (a) The hardship for which the variance is requested is unique to the property in that: the Urban Renewal Plan project controls stipulate townhouse development and property must be developed in accordances with U.R.P.

   (b) The hardship is not general to the area in which the property is located because this property is located within an U.R.P. area subject to project controls.

3. The variance will not alter the character of the area adjacent to the property, will not impair the use of adjacent conforming property, and will not impair the purpose of the regulations of the zoning district in which the property is located because: project site is vacant and proposed development is supported by Anderson Hill, Cental East Austin Neighborhood Associations, planning team and promotes Smart Growth, S.M.A.R.T. [Safe, Mixed-Income, Accessible, Reasonably Priced, and Transit-Oriented] housing and A.R.A. [Austin Revitalization Authority] goals.

Appellant timely appealed the Board=s decision to grant the variances. In addition to its explicit findings, the Board cited the following reasons for issuing the variances:

1. The URP called for the construction of townhomes.

2. Receipt of federal funds was conditioned on the construction of affordable housing for persons at 80% or below the median family income.

6

3. In order to place affordable housing in the form of townhomes on each of these lots, variances were needed given the current configuration of the lots and other constraints on the property.

4. Current lot configurations would not meet the City=s lot-size requirements for the construction of townhomes.

5. Because driveway access to East 12th Street was prohibited by City ordinance, an alleyway had to be built behind the townhomes at a cost between $250,000 to $400,000.

6. The construction of an alley would reduce the depth of each lot by 20 feet.

7. To meet the City=s lot-size requirements for townhomes of 3600 square feet, each lot had to measure 44 feet wide (44 feet wide x 84 feet long = 3696 square feet).

8. Lots could not be less than 50 feet wide, however, so a lot-width variance was required.

9. The City=s ability to construct affordable housing was jeopardized by the costs associated with alley construction.

10. Current zoning regulations did not allow for a reasonable use

11. Only one of the twelve lots designated ACS-MU-CO@ could support any residential or commercial use.

In response, appellant argued that the applicable zoning regulations would not have prevented the City from putting the property to some reasonable use had the City had more reasonable expectations for the property. Specifically, appellant complained that the City was attempting to over-burden the property, that is, build more townhomes than the property could support. Appellant also argued that the alleged hardship was not unique to the area but driven by financial considerations alone. He argued that the City could not show that absent the variances, the City would be deprived of privileges afforded

7

other similarly situated property owners because no other property owners were similarly situated; that is, no other nearby property was zoned ACS-MU-CO.@ On February 6, 2003, the trial court heard arguments in support of the City=s motion for summary judgment, and granted the motion on March 11, 2003.

On appeal from the district court=s ruling, appellant raises four issues. In one issue, appellant challenges the Board=s decision to grant the variances on the grounds that the variance granted the City use of its property not enjoyed by similarly situated property owners. Such a decision, according to appellant, amounted to Arezoning by variance.@ Appellant raises three issues dealing with the Board=s hardship finding. According to appellant, the Board abused its discretion in finding hardship because (1) the City cannot ask for relief from a hardship that was self-imposed; (2) a hardship finding cannot be justified solely on financial need; and (3) there was no causal nexus between the hardship claimed and the variance sought since the City would have to resubdivide the property even with the variance.

**DISCUSSION**

**Board Authority**

We begin with a review of the Board=s authority. The Board is authorized to make Aspecial exceptions@ to the terms of a zoning ordinance Ain appropriate cases and subject to appropriate conditions and safeguards@ that are Aconsistent with the general purpose and intent of the ordinance.@ Tex. Loc. Gov=t Code Ann. ' 211.008(a) (West 1998). It may grant a variance from the terms of a zoning ordinance if (1) the variance is consistent with the public interest and the spirit of the ordinance; (2) special conditions on the property exist, (3) literal enforcement of the ordinance would result in an unnecessary hardship; and (4) the issuance of the variance would result in Asubstantial justice.@ *Id*. ' 211.009(a)(3) (West 1999). The Board

8

is authorized to grant a variance from the terms of a zoning ordinance where Athe strict application of [the City=s zoning laws] deprives the property owner of privileges that are enjoyed@ by others similarly situated. Austin, Tex., Land Dev. Code ' 25-2-473. In granting a variance, the Board must make the following findings of fact: (1) the restrictions in the current zoning ordinance do not allow for Aa reasonable use of property;@ (2) the hardship necessitating the variance is unique to the property and not generally characteristic of the area; and (3) development under the variance will not impair or alter the use or character of adjacent property or clash with the underlying purposes of the zoning restrictions. *Id*. ' 25-2-474.

**Review of board decisions**

Any person injured by the Board=s decision may challenge the legality of its decision in a court of record. Tex. Loc. Gov=t Code Ann. ' 211.011(a) (West Supp. 2004). The court may grant a writ of certiorari directed to the Board.[7] *Id*. ' 211.011(c). The Board must file a verified return concisely stating any pertinent and material facts showing the grounds for its decision. *Id*. ' 211.011(d). The court may take additional evidence if Anecessary for the proper disposition of the matter.@ *Id*. ' 211.011(e). The party challenging the Board=s decision has the burden of establishing its illegality. *Pearce v. City of Round Rock*, 78 S.W.3d 642, 646 (Tex. App.CAustin 2002, pet. denied). The decision is presumed legal and is

---

[7] At common law, a review by certiorari was limited to determining whether the inferior body had acted within its proper jurisdiction. *City of San Angelo v. Boehme Bakery*, 190 S.W.2d 67, 70 (Tex. 1945). The only remedy for a jurisdictional error was to quash the record. *Id*. at 70. A review by certiorari of a decision of a board of adjustment is broader than at common law in that in passing on the legality of the order of the board, the trial court will consider not only the original filings before the board but additional evidence introduced before the trial court as well. *Id*.

reviewed for a clear abuse of discretion. *Id*. A clear abuse of discretion occurs where the Board has acted without reference to any guiding principles or rules of law. *Id*. As long as some evidence of substantive and probative character exists to support the Board=s decision, it has not abused its discretion. *Southwest Paper Stock, Inc. v. Zoning Bd. of Adjustment*, 980 S.W.2d 802, 805-06 (Tex. App.CFort Worth 1998, no pet.).

**Review of the trial court**

The City moved for summary judgment. *See* Tex. R. Civ. Proc. 166a(b), (c). The trial court granted the City=s motion without specifying the grounds. We must affirm if any of the movant=s grounds have merit. *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995). The City=s motion was based on two grounds: (1) The Board=s decision was supported by evidence of substantive and probative character and (2) the Board=s decision was supported by evidence of the need for affordable housing. We begin by reviewing the Board=s hardship finding.

**Hardship**

In three issues, appellant challenges the legality of the Board=s finding of hardship. Again, the Board could grant the variance if literal enforcement of applicable zoning laws would result in an unnecessary hardship. *See* Tex. Loc. Gov=t Code Ann. ' 211.009(a)(3); Austin, Tex., Land Dev. Code ' 25-2-473. Appellant=s first two hardship issues question the sufficiency of the evidence before the Board. Appellant claims that it was an abuse of discretion for the Board to grant the variances because the evidence

showed that the hardship suffered by the City was self-imposed and that the hardship was financial in nature. Appellant=s last hardship issue challenges the need for the variances altogether.

### *Self-imposed hardship*

First, according to appellant, the City=s hardship was self-imposed. Appellant contends that the City=s goal of building between ten and twenty townhomes was unreasonable given the size and shape of the lots. According to appellant, the property was compatible with some residential developmentCjust not to the degree or at the density the City intended. By burdening the property with more townhomes than it could support, the City was imposing the hardship on itself. In response, the City denies attempting to over-burden the property and adds that without the variances it could make no use of the property, commercial or residential, because the lots did not meet the area requirements for commercial development.

Whether a hardship exists is a question of fact to be determined by the Board. *Freeman v. Board of Adjustment*, 230 S.W.2d 387, 388 (Tex. Civ. App.CSan Antonio 1950, no writ). On appeal, the issue is not whether there was hardship, but whether the trial court, after examining all the evidence, could conclude as a matter of law that the Board had evidence of a substantive and probative nature before it upon which it could conclude that a literal enforcement would result in an unnecessary and unique hardship. *Currey v. Kimple*, 577 S.W.2d 508, 513 (Tex. Civ. App.CTexarkana 1978, writ ref=d n.r.e.). Where, owing to no fault of the owner, the lots are configured in such a way as to make them incompatible with zoning laws and the strict application of those zoning laws would deny the property owner reasonable use of the property, the Board has the authority to grant a variance from the zoning restrictions. *Id*. Such is the case here. There is no evidence that the City was the original developer of the property or that it was

11

responsible for subdividing the lots into their present non-conforming shapes. In the absence of evidence the substandard lot configuration was the product of deliberate conduct of the City, the City=s hardship was not self-imposed. We overrule appellant=s first hardship issue.

### *Financial hardship*

Appellant=s second issue deals with the financial reasons the City cited in support of the requested variances. Appellant believes that the Board=s decision to grant the City=s variances rested solely on the economic considerations cited by the City. According to appellants, the City sought the variances it didCa twenty foot-reduction in the lot width requirement, a 3250 square-feet reduction in the lot-size requirement, a 1100 square-feet reduction in the site-size requirement, and five foot-reduction in the side-street setback requirementCso that it could make maximum use of the property at minimal cost. At one point in the hearing, the Board asked Freese why the City had proposed the number of townhomes it had. He responded:

> Why so many? Site development costs are the same for the city as they are for a private developer, even though we=re the city and we=re using federal money, we still have to be guardians of that federal money and use it to the best of our ability.
>
> The site development costs are going to be the same whether we put 5 houses up there or 10. Now, if you don=t give us the variances, we will build 5 units instead of 10 but they are going to be far less affordable, that=s going to push the affordability rather than maybe getting somebody at 60% MFI, it could be the cost would go up and we=ll only be able to get people at 80% MFI. I can=t give you those numbers until we know of your decision and the engineers go back and design and we design the houses. But, that=s the issue, we=re gonna have to build the alley regardless, the engineers are estimating the alleys going to be between $250,000 and $400,000. That cost is gonna be there whether we build 5 houses or 10 or 15. That=s why we=re trying to build as many in there as possible to make it as cost effective as possible.

12

A similar "economies-of-scale" argument was rejected in *Board of Adjustment of City of San Antonio v. Willie*, 511 S.W.2d 591, 594 (Tex. Civ. App.─San Antonio 1974, writ ref'd n.r.e.). In that case, the property owner sought a variance from an ordinance limiting the height of buildings. *Id*. at 592. The board of adjustment granted the variance without making a specific finding of hardship. *Id*. at 593. Instead, it had based its decision solely on the testimony of the property owner's engineer who said that the multistoried structure was the "highest and best use of this very valuable commercial property in that by going up you spread the costs of the land." *Id*. at 594. The board's decision was reversed in the absence of noneconomic evidence supporting the board's hardship finding. *Id*.; *see also Bat'les v. Board of Adjustment & Appeals*, 711 S.W.2d 297, 300 (Tex. App.─Dallas 1986, no writ) (reversing decision to grant variance to developer where only showed that hardship suffered by applicant was economic).

Appellant cites the correct rule governing a finding of hardship. He states, AIn order to justify a variance, a hardship must not be self-imposed, nor financial only, and must relate to the very property for which variance is sought, i.e. a condition unique, oppressive, and not common to other property.@ *See Town of S. Padre Island v. Cantu*, 52 S.W.3d 287, 290 (Tex. App.CCorpus Christi 2001, no pet.); *Moody v. City of Univ. Park*, 278 S.W.2d 912, 920 (Tex. Civ. App.CDallas 1955, writ ref=d n.r.e.). This is the rule as we understand it. But turning to the record before the trial court, we find that the Board=s decision was supported by noneconomic evidence. The evidence showed that the property along East 12th Street and Navasota consisted of 12 irregularly sized lots. The lots were subdivided into irregular shapes before the City zoned the property and created the various minimum lot-size requirements. The lots on Navasota were less than 50 feet wide and 5,750 square feet in size and could not support commercial or residential use. Of the nine lots on 12th Street, only two were large enough to accommodate any commercial or residential useCthe lots at 1105 and 1111 East 12th Street. The latter was the address of the Connelly-Yearwood home, which was scheduled for renovation. The City=s plan to carve out the Connelly-Yearwood home from the remainder of the lot and put the remainder to residential use was stymied by a large tree present on the lot. Other lots were burdened by topographical restraints making residential use impracticable. We find this evidence sufficient to support the Board=s decision and overrule appellant=s second issue.

*No nexus between the variance sought and hardship claimed*

Appellant raises a third hardship issue; namely, the Board=s decision to grant the variances was illegal because the City had not demonstrated a nexus between the hardship claimed and the variances

14

sought. In short, appellant claims the remedy available to the City was to resubdivide the property and not to vary its boundaries. Appellant alleged that Aeven with the variances, the City will have to resubdivide as two of the presently configured lots would not meet the reduced thirty-foot lot width requirement, nor the uniform thirty foot lot widths provided in the City=s own plans.@ Appellant also contends that there was some intermediate lot configuration available to the City that would allow for an alternative residential useCone available without the need to vary the boundaries of the property as extensively as the City proposed. Appellant argued that the City cannot justify such an Aextreme departure@ from the zoning laws that govern the property=s development. He suggests a use, SF-4,[8] that would be less of a departure from present zoning restrictions and would allow for reasonable use. The City contends that the issue was not whether the City had an alternative residential option but whether the City could make any use of the property absent the variances.

We find nothing illegal about the Board=s decision to grant the City the variances under the grounds proposed by appellant. We agree with the City that the only issue before the Board was the propriety of the City=s requested variances. The Board=s decision was proper because there was evidence that a strict application of the terms of the commercial and residential zoning ordinance would deprive the City of the reasonable use of the property. Evidence as to alternative uses available to the City once the variances were granted did not bear on whether the City could make any use of the property absent the

[8] Single-family residence small lot (SF-4A) district is the designation for a moderate density single-family residential use on a lot that is a minimum of 3,600 square feet. Austin, Tex., Land Dev. Code ' 25-1-58 (2003).

15

variances.[9] For example, appellant says the City should have asked to construct single-family residences on the property instead of townhomes because that choice would require less of a departure from the lot-size restrictions. The Texarkana Court of Appeals in *Currey* rejected that very argument. 577 S.W.2d at 513. Once the variance is granted, the property owner is free to put the property to any conforming use. *Id.*

---

[9] By confusing the type of relief requested by the City, appellant misunderstands the difference between a Ause variance@ and an Aarea variance.@ The City was not attempting to put the property to any prohibited use. Townhomes are a permitted use in a AMixed Use District.@ Austin, Tex., Land Dev. Code '' 25-2-172, 25-2-646(3). Appellant says that the City could have constructed single-family residences on the property. That is true but the City chose to construct townhomes on the property. It had every right to do so.

16

Evidence of some other permitted use would have been relevant if the record showed that the property, as configured, could have supported some commercial or residential use. Since all development on this property was governed by area regulations for property zoned ACommercial Services@ and the record shows that the lots, save one, did not meet those regulations, the Board=s decision was reasonable. A finding of hardship must be based on a finding that the property, as situated, would not support some conforming use. *See Bat=tles*, 711 S.W.2d at 300; *Curry*, 577 S.W.2d at 513; *Board of Adjustment v. Stovall*, 218 S.W.2d 286, 288 (Tex. Civ. App.CFort Worth 1949, no writ). The record shows that the City could not put the property to reasonable use under the applicable zoning regulations. Once the Board determined that a strict application of the area restrictions would deprive the City of reasonable use of the property, commercial or residential, then the City was free to make whatever residential use of the property it saw fit.[10]

---

[10] While the Board=s findings of fact specifically cite compliance with the URP as its justification for finding hardship, the record indicates that there was other evidence supporting the Board=s decision such as the physical characteristics of the property and the irregularly sized lots. Evidence that the design for the property would have some ancillary public benefit strengthens the equitable considerations before the Board, Tex. Loc. Gov=t Code Ann. ' 211.009(a)(3) (requiring the Board to do Asubstantial justice.@), but cannot form the sole basis for finding a hardship, Anderson, *supra* ' 20.41.

Last, we find that appellant has not supported his assertion with any legal authority that resubdivision was the only relief available to the City. Evidence as to other relief available to the City did not bear on the propriety of the City=s requested variance.

Having found that the Board=s decision to grant the variances was supported by the evidence of substantive and probative character, we overrule appellant=s third hardship issue.

*Rezoning by variance*

In his last issue, appellant contends that in granting the City=s variances, the Board rezoned the property, a legislative power vested only in the Austin City Council. Appellant argues that the Board does not have the authority to vary the terms of the zoning ordinance. As indicated above, the Board is specifically authorized to vary the terms of the zoning ordinance. Tex. Loc. Gov=t Code Ann. ' 211.009(a)(3).

Appellant also argues that the City failed to establish that Abecause of special circumstances of a property, the strict application of this chapter deprives the property owner of privileges that are enjoyed *by another person who owns property in the area that has the same zoning designation as the property for which the variance is requested*.@ Austin, Tex., Land Dev. Code ' 25-2-473. Appellant argues that because there is no other property in the area with the same ACS-MU-CO@ designation, the request for a variance should have been denied. The City counters that the only findings the Board was required to make before granting a variance were those found in section 25-2-474 of the City of Austin=s

18

Land Development Code.[11]  Consequently, the failure to show that the City was denied a privilege afforded similarly situated property owners does not render the Board=s decision illegal.

We disagree with the City=s argument that the sole criteria for granting a variance is found in section 25-2-474.  While the Board is not required to make an explicit finding that the property owner has been denied a privilege afforded similarly situated property owners, there must be evidence in the record that the City was denied a privilege afforded to other similarly situated property owners within the area.  But we find that there was.  While there was no property in the area zoned ACS-MU-CO,@ there was other residential property.  Neither appellee nor appellant cite us to any Texas case law interpreting a similar criteria for granting a variance but it is rather clear that the City was denied a privilege afforded other residential property ownersCthe right to construct some residential housing.  As we have indicated above, given the current configuration of the lots, only one of the 12 lots designated ACS-MU-CO@ could sustain any development, commercial or residential; consequently, we overrule appellant=s fourth issue.

## CONCLUSION

---

[11]  The board of adjustment must make the following required findings: (1) the restrictions in the current zoning ordinance do not allow for Aa reasonable use of property;@ (2) the hardship necessitating the variance is Aunique to the property and is not generally characteristic of the area in which the property is located;@ and (3) development under the variance will not impair or alter the use or character of adjacent property or clash with the underlying purposes of the zoning restrictions.  Austin, Tex., Land Dev. ' 25-2-474 (2003).

We find the record before the trial court contained evidence of substantive and probative character in support of the Board=s decision to grant the variances.  We affirm the trial court=s judgment granting the City=s motion for summary judgment.

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   March 25, 2004