

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00092-CV

_____

RANGER ABBOTT, Appellant

V.

CITY OF PARIS, TEXAS, AND KEVIN CARRUTH, Appellees

_____

On Appeal from the 62nd District Court
Lamar County, Texas
Trial Court No. 81904

_____

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

## O P I N I O N

### I.     Factual and Procedural History

This lawsuit, stemming from Ranger Abbott's purchase in 2008 of a 7.77-acre tract of land (the Property) in Paris, Texas, is burdened with a complex history involving a previous lawsuit and appeal to this Court. Both suits concern attempts by Abbott to expand a mobile home park on the Property. When Abbott purchased the Property, approximately one-half of it was being used as a mobile home park and was so used prior to the City's annexation of the Property. Although the remainder of the Property was unused, Abbott intended to expand the mobile home park to encompass all of the Property.

While the Property was zoned "Commercial" when Abbott acquired it, the Paris City Manager at that time, Kevin Carruth, informed Abbott by letter that a mobile home park was an "approved, non-conforming use" of the Property. Abbott understood Carruth's letter to mean that expansion of the mobile home park onto the unused portion of the Property would also be permitted as an approved, nonconforming use. Problems arose, however, when Abbott submitted a plat to the City's Planning and Zoning Department (the Department) detailing proposed locations of new roadways, driveways, trailer pads, and utilities. Upon receiving the plat, the Department informed Abbott that the placement of additional manufactured homes on the Property would require a change in zoning designation from "Commercial" to "Single-Family Dwelling No. 3." Believing that this rezoning requirement amounted to a breach of Carruth's letter—interpreted by Abbott as a contract—Abbott sued the City. Shortly after suit was filed, Abbott's building permit request for the placement of additional manufactured housing

2

on the unused portions of the Property was denied because the unused portion of the Property was not zoned for use as a mobile home park.

Abbott did not attempt to have any portion of the Property rezoned.[1] Instead, he pursued litigation against the City and Carruth[2] alleging numerous claims, including breach of contract. The City filed a plea to the jurisdiction, which the trial court granted, but only with respect to the claims filed under the Texas Tort Claims Act. The trial court denied the City's plea to the jurisdiction relating to Abbott's claims for "inverse condemnation, . . . violations of procedural and substantive due process and equal protection[,] . . . breach of contract[,] and declaratory relief." *City of Paris v. Abbott*, 360 S.W.3d 567, 570 (Tex. App.—Texarkana 2011, pet. denied). The City appealed the denial of the plea on these claims. Because the trial court did not have subject-matter jurisdiction, this Court reversed the trial court's judgment and rendered judgment dismissing Abbott's lawsuit. *Id.* That decision was based primarily on the fact that Abbott failed to exhaust all available administrative remedies prior to bringing the lawsuit. *Id.* at 573–74, 577, 579, 582.

In October 2012, Abbott filed a second lawsuit against the City alleging that, although he undertook additional efforts to resolve the expansion issue through appropriate administrative channels after this Court's 2011 opinion was issued, those efforts were arbitrarily rejected. Abbott alleged causes of action against the City for (1) regulatory taking, (2) denial of due

---

[1]The City concedes that a mobile home park is an existing, nonconforming use of that portion of the Property that was so used at the time the Property was annexed. The City further concedes that this nonconforming use will remain viable for that portion of the Property in the future. The controversy centers on the proposed expansion of the mobile home park use to previously unused portions of the Property.

[2]The City and Carruth, appellees in this Court, will be referred to jointly as the City.

process of law, and (3) denial of equal protection under the law. In response, the City filed a plea to the jurisdiction alleging that Abbott failed to present any statute or recognized theory of law that would satisfy a valid waiver of governmental immunity and further claiming that Abbott failed to exhaust his administrative remedies. The trial court granted the City's plea to the jurisdiction.

Abbott appeals, claiming that the trial court erred in granting the City's plea to the jurisdiction because (1) he fully pursued all administrative remedies available with the City, (2) he established a claim for inverse condemnation, (3) the City violated his procedural and substantive due process rights, and (4) the City violated his equal protection rights. Because Abbott, once again, failed to exhaust all available administrative remedies, the trial court lacked subject-matter jurisdiction. As a result, we affirm the judgment of the trial court.

## II. Standard of Review

In reviewing a trial court's ruling on a plea to the jurisdiction, we first look to the pleadings to determine if jurisdiction is proper. *City of Waco v. Kirwan*, 298 S.W.3d 618, 621 (Tex. 2009). We construe the pleadings in favor of the nonmovant. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). Whether a trial court has subject-matter jurisdiction is a question of law subject to de novo review. *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence on that issue. *Kirwan*, 298 S.W.3d at 622. If the relevant evidence is

4

undisputed or fails to raise a fact question on the jurisdictional issue, the plea to the jurisdiction is determined as a matter of law. *Id*.

## III.    Analysis

Abbott contends that he exhausted all available administrative remedies and that exhaustion should no longer hinder subject-matter jurisdiction in the trial court. In his previous lawsuit, Abbott asserted a breach of contract claim against the City based on Carruth's letter. The pursuit of that contract claim required the exhaustion of administrative remedies. *Abbott*, 360 S.W.3d at 572. This Court determined that, because Abbott failed to exhaust his administrative remedies with respect to the contract claim, the trial court did not have subject-matter jurisdiction over that breach of contract claim. *Id*. at 573. This case, however, does not involve a breach of contract claim. Instead, Abbott asserts federal and state (1) takings claims, (2) due process claims, and (3) equal protection claims. Each of these claims was likewise asserted in Abbott's previous lawsuit.

### A.    The Takings Claims

In an exhaustive analysis of Abbott's previously asserted takings claims, this Court determined that the trial court had no jurisdiction over either the federal or state claims. Because state proceedings had not concluded, Abbott's federal takings claim was not ripe. *Id*. at 579. Further, Abbott's state takings claim was not ripe based on Abbott's failure to obtain a final decision through the use of administrative procedures. *Id*. at 582.

Abbott now reasserts his takings claims on the apparent basis that, because he has now exhausted all administrative remedies, these claims are ripe for adjudication. We disagree.

5

Abbott's federal takings claim remains in the same posture it was in when we previously reviewed this matter. As before, Abbott's federal takings claim is not ripe because state proceedings have not yet concluded. *See Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195 (1985) ("[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation."); *Hallco Tex., Inc. v. McMullen Cnty.*, 221 S.W.3d 50, 59 (Tex. 2006) ("[A] federal [takings] claim is not ripe until state court proceedings have been concluded.").

In our previous decision, we explained that the "'ripeness doctrine' involves the issue of jurisdiction of the subject matter and power to render particular relief." *Abbott*, 360 S.W.3d at 578 (citing *Mayhew*, 964 S.W.2d at 928). "A controversy is 'ripe' for the courts when it has 'legally matured.'" *Id*. (citing *Abbott Labs v. Gardner*, 387 U.S. 136 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)). Further, "[a]n administrative action must be final before it is judicially reviewable. The finality requirement is concerned with whether the initial decision maker has arrived at a definitive position on the issue that inflicts an actual, concrete injury." *Id*. at 579 (citations omitted). "'There can be no 'taking' by eminent domain until this condition is complied with.'" *Id*. (quoting *City of El Paso v. Madero Dev*., 803 S.W.2d 396, 400 (Tex. App.—El Paso 1991, writ denied)).

Prior to filing his initial lawsuit, Abbott did not attempt to have any portion of the Property rezoned. This failure was fatal to the trial court's jurisdiction over Abbott's state

6

takings claim because there was no final, administrative action resolving the zoning question. *Id.* at 582. In our previous opinion, we outlined the administrative procedures at Abbott's disposal:

> Under the City's ordinances, the city council is responsible for enacting zoning ordinances. PARIS, TEX., ZONING ORDINANCE 1710 § 1–100 App. C (1957). The planning commission is responsible for more specific regulations governing the subdivision of land. Section 21–100 of the Paris Zoning Ordinance, entitled "Amendments" allows any person having a proprietary interest in any property to petition the planning and zoning commission for a change or amendment to the provisions of the Zoning Ordinance. PARIS, TEX., ZONING ORDINANCE 1710 § 21–100 App. C (1957). Once the petition is made, the city council may amend, supplement, or change by ordinance the established boundaries of the districts or the regulations, provided the matter is submitted to the planning and zoning commission for its recommendation and report. PARIS, TEX., ZONING ORDINANCE 1710 §§ 21–101, 21–102 App. C (1957). After compliance with procedure for public hearing outlined in Sections 21–103–21.105, the city council votes on the proposed amendment. PARIS, TEX., ZONING ORDINANCE 1710 §§ 21–103–21.105 App. C (1957). The decision of the Paris city council may be appealed to a board of adjustment, which may "authorize in specific cases a variance from the terms of a zoning ordinance," under certain circumstances. TEX. LOC. GOV'T CODE ANN. § 211.009(a)(3) (West 2008); PARIS, TEX., ZONING ORDINANCE 1710 § 21–106 App. C (1957).

*Id*. at 581–82.

Abbott acknowledges that he has never attempted to have any portion of the Property rezoned, even after our 2011 opinion issued. Abbott further acknowledges that the decision not to request rezoning was a deliberate choice he made while he was represented by counsel and with full knowledge of the forms and procedures in place for requesting a zoning change. Instead, Abbott took a different tack. After the issuance of our 2011 opinion and in an evident attempt to exhaust his administrative remedies, Abbott presented the City with a document captioned "Application for Extension Confirmation of Existing Non-Conforming Use." Abbott testified that this was not a form he received from the City; rather, his attorney prepared the

7

form.  The City does not have a form for seeking an extension of a nonconforming use.  The City refused to accept Abbott's form and offered Abbott the City's form for requesting a zoning change.

Abbott's "Application for Extension Confirmation of Existing Non-Conforming Use" requested "[t]hat [the] existing[,] non-conforming use of the remainder (less than 50%) of the tract be confirmed as to the remainder of the tract."  Essentially, Abbott was seeking both an extension or continuation and an enlargement of the existing, nonconforming use.  The City of Paris' zoning ordinance sets forth the parameters of permissible nonconforming structures and uses.  *See* PARIS, TEX. ZONING ORDINANCE 1710 §§ 15-100–102 (1988).  Nothing in that zoning ordinance permits the expansion of a nonconforming use.[3]  To the contrary, the relevant sections

---

[3]Section 15-100 provides,

> A nonconforming status shall exist under the following provisions of this ordinance:
>
> a.  When a use or structure which does not conform to the regulations prescribed in the district in which such use or structure is located was in existence and lawfully operating prior to September 9, 1957, and has been operating since without discontinuance.
>
> b.  When on the effective date of this ordinance the use or structure was in existence and lawfully constructed, located and operating in accordance with the provision of the prior zoning ordinance or which was a nonconforming use thereunder, and which use or structure does not now conform to the regulations herein prescribed for the district in which such use or structure is located.
>
> c.  When a use or structure which does not conform to the regulations prescribed in the district in which such use or structure is located was in existence at the time of annexation to the City of Paris and has since been in regular and continuous use.

PARIS, TEX. ZONING ORDINANCE 1710 § 15-100.

> Section 15-101 provides,

> Any nonconforming use of land or structures may be continued for definite periods of time subject to such regulations as the Board of Adjustment may require for immediate preservation of the adjoining property prior to the ultimate removal of the nonconforming use. The Building Official

of the ordinance appear to move in the opposite direction, toward the ultimate elimination of nonconforming uses and structures. Thus, the relief Abbott sought in his application was not relief that was available under the City's ordinance. The City's refusal to accept Abbott's application was not based merely or even primarily on the fact that it was not submitted on a City-promulgated form; rather, it was primarily based on the unavailability of the requested relief under the City's zoning ordinance. In other words, the driving force behind the decision to reject Abbott's application was the fact that the City lacked the power to grant the relief Abbott requested in the application.

After the City refused to file Abbott's application, Abbott attempted to appeal what he describes as the City's "summary denial" of that application. The attempted appeal was made to the board of adjustment and was submitted on a City-promulgated form. Abbott's form of appeal indicated that he wished to appeal from "Zoning Ordinance No. 1710, Section 15-100(c),

---

may grant a change of occupancy from one nonconforming use to another, providing the use is within the same, or higher or more restricted classification as the original nonconforming use. In the event a nonconforming use of a building may be changed to another nonconforming use of more restricted classification, it shall not later be changed to a less restrictive classification of use and the prior less restrictive classification shall be considered to have been abandoned.

PARIS, TEX. ZONING ORDINANCE 1710 § 15-101.

Section 15-102 provides,

If a structure occupied by a nonconforming use is destroyed by fire, the elements or other cause, it may not be rebuilt except to conform to the provisions of this ordinance. In the case of partial destruction of a nonconforming use not exceeding seventy-five (75) percent of its reasonable value, reconstruction will be permitted but the size or function of the nonconforming use cannot be expanded.

PARIS, TEX. ZONING ORDINANCE 1710 § 15-102.

15.101."[4] Section 15-100(c) permits nonconforming uses or structures on property that has been annexed into the City if the nonconforming uses or structures (1) were in existence at the time of annexation and (2) have been in regular and continuous use since annexation. *See* PARIS, TEX. ZONING ORDINANCE 1710 § 15-100(c). Section 15-101 generally addresses changes from one nonconforming use to another, more restrictive nonconforming use of the same classification. *See* PARIS, TEX. ZONING ORDINANCE 1710 § 15-101.

The City advised Abbott that the change he was seeking—expansion of the mobile home park use to the entirety of the Property—required a zoning change. Shawn Napier, the City of Paris Director for Engineering, Planning & Development, told Abbott that the board of adjustment had no authority to change zoning and, as a result, would not accept Abbott's appeal. Napier advised Abbott that requests for zoning changes had to be filed with the planning and zoning commission. Moreover, Napier noted that Abbott's appeal to the board of adjustment failed to specify the grounds for appeal. *See* TEX. LOC. GOV'T CODE ANN. § 211.010(b) (West 2008); PARIS, TEX. ZONING ORDINANCE 1710 § 16-102 (1988). Napier testified that Abbott's appeal form was rejected as incomplete because it failed to set out what Abbott was attempting to accomplish. It clearly did not, however, seek a variance—a matter within the jurisdiction of the board of adjustment. *See* PARIS, TEX. ZONING ORDINANCE 1710 § 16-200 (1988).

Even if Abbott's appeal to the board of adjustment had been accepted, the board lacked the authority to provide the type of relief Abbott ultimately seeks. The entirety of the Property is zoned "Commercial." The nonconforming mobile home park use, which is limited to a well-

---

[4]The text of these sections is recited in footnote 3 of this opinion.

defined portion of the Property, is permitted under Section 15-100(c) because it was in existence at the time the Property was annexed by the City and has been in regular and continuous use since that time. The parameters of that permitted, nonconforming use, however, are limited and are defined by the scope of the use at the time the Property was annexed. Section 15-100(c) is simply not applicable to the undeveloped portion of the Property that was not used as a mobile home park at the time the Property was annexed. As a result, the undeveloped portion of the Property is subject to the permitted uses and restrictions of its "Commercial" zoning classification, which does not allow for mobile home park use. Under the City's current zoning ordinance, the only way Abbott can achieve his goal of using the undeveloped portion of the Property as a mobile home park is to secure a change in the zoning classification from "Commercial" to a classification that supports mobile home park use, e.g., "Single-Family Dwelling No.3."

A board of adjustment is restricted in its decisions to the powers vested in it by the enabling act and the particular zoning regulation in question. *Driskell v. Bd. of Adjustment*, 195 S.W.2d 594, 598–99 (Tex. Civ. App.—Fort Worth 1946, writ ref'd n.r.e.). In other words, a municipal board of adjustment "must act within the strictures set by the legislature and city council and may not stray outside its specifically granted authority." *W. Tex. Water Refiners, Inc. v. S & B Beverage Co.*, 915 S.W.2d 623, 626 (Tex. App.—El Paso 1996, no writ). If a use is prohibited under a zoning ordinance, either explicitly or impliedly, any special exception allowing it is void and subject to collateral attack. *Id.* at 627; *Swain v. Bd. of Adjustments of the City of Univ. Park*, 433 S.W.2d 727, 731–32 (Tex. Civ. App.—Dallas 1968, writ ref'd. n.r.e.).

11

The procedure for changing or amending zoning is set out in the zoning ordinance. PARIS, TEX. ZONING ORDINANCE 1710 §§ 21-100–106 (1988). A property owner may petition the planning and zoning commission for an amendment to the provisions of the zoning ordinance; the commission may study the proposal and make a recommendation to the city council. The city council is authorized to amend the boundaries of the zoning district in accordance with Section 21 of the Zoning Ordinance. A board of adjustment has no power to grant zoning exceptions or variances that amount to an ordinance amendment. Tex. Att'y Gen. Op. No. JM-493 (1986).[5] Tacitly acknowledging this conundrum, Abbott complains that the

---

[5]Certain, enumerated matters fall within the jurisdiction of the City of Paris Board of Adjustment:

*Jurisdiction*: When in its judgment, the public convenience and welfare will be substantially served and the appropriate use of the neighboring property will not be substantially or permanently injured, the Board of Adjustment may, in specific cases, after public notice and public hearing, and subject to appropriate conditions and safeguards authorize the following special exceptions to the regulations herein established.

a. Permit the reconstruction, extension or enlargement of a building occupied by nonconforming use on the lot or tract occupied by such building provided such reconstruction does not prevent the return of such property to a conforming use.

b. Permit such modifications of the height, yard, area, coverage and parking regulations as may be necessary to secure appropriate development of a parcel of land which differs from other parcels in the district by being of such restricted area, shape, or slope that it cannot be appropriately developed without such modification.

c. Require the discontinuance of nonconforming uses of land or structure under any plan whereby the full value of the structure and facilities can be amortized within a definite period of time, taking into consideration the general character of the neighborhood and the necessity for all property to conform to the regulations of this ordinance. All actions to discontinue a nonconforming use of land or structure shall be taken with due regard for the property rights for the persons affected when considered in the light of the public welfare and the character of the area surrounding the designated nonconforming use and the conservation and preservation of property. The Board shall from time to time on its own motion or upon cause presented by interested property owners inquire into the existence, continuation or maintenance of any nonconforming use within the City.

PARIS, TEX. ZONING ORDINANCE 1710 § 16-200.

zoning ordinance restricts the board's power by allowing only certain "special exceptions" to the zoning regulations in the form of a variance, none of which apply to his situation.[6] Abbott thus claims he was denied the availability of any administrative remedy by appeal to the board of adjustment and relies on *Mayhew* for the proposition that there is no requirement that a plaintiff submit futile variance requests or reapplications. *Mayhew*, 964 S.W.2d at 937. Abbott concludes that, because he has no administrative remedy by appeal to the board of adjustment (and further efforts to seek such a remedy would be futile), he has satisfied the requirement that he exhaust all available administrative remedies, and his takings claims are ripe for judicial review.[7]

In further support of this position, Abbott contends that the City did not advise him that his only administrative remedy was to request a zoning change until after this Court issued its 2011 opinion. Abbott further contends that a change in the Property's zoning classification, as a practical matter, is highly unlikely. We first note that it is Abbott's responsibility, not the City's, to determine all available administrative remedies. Further, and contrary to Abbott's assertions before this Court, the record establishes that the City advised Abbott on numerous occasions that a zoning change request was the appropriate course of action. Abbott was advised prior to his

---

[6]*See* footnote 4.

[7]Abbott further complains that the factors set forth in the board of adjustment's variance application packet as failing to qualify as unnecessary hardships (required for a variance) limited his ability to seek administrative relief from the board. Given the fact that Abbott's appeal to the board of adjustment did not request a variance, this complaint is spurious. Further, the City's listing of circumstances which fail to qualify as unnecessary hardships is well defined in Texas caselaw. *See Bd. of Adjustment of City of Piney Point Village v. Solar*, 171 S.W.3d 251, 255 (Tex. App.— Houston [14th Dist.] 2005, pet. denied) (financial hardship does not constitute unnecessary hardship sufficient to support variance); *Ferris v. City of Austin*, 150 S.W.3d 514, 522 (Tex. App.—Austin 2004, no pet.) (self-imposed hardship or one that is only financial does not justify variance); *Bd. of Adjustment of City of San Antonio v. Willie*, 511 S.W.2d 591, 594 (Tex. Civ. App.—San Antonio 1974, writ ref'd n.r.e.) (variance not authorized merely to accommodate highest and best use of property).

13

original lawsuit in 2010 that he should file an application for rezoning. Later, Abbott was advised on more than one occasion by City employees that he needed to seek a zoning change.

Abbott's claim that a zoning change request would not be granted is pure speculation. Abbott acknowledged that he does not know how the planning and zoning commission would respond to an application to rezone the Property (or a part thereof). In fact, Abbott cannot know the outcome of a rezoning request until such request has been made. To date, that has not been done. Abbott has presented no evidence that he is excused from pursuing the rezoning application as an available administrative remedy, and there is no credible evidence to support the conclusion that the filing of a rezoning application would have been futile.[8]

---

[8]Abbott testified on this issue:

> Q.     Do you have any belief that the City of Paris would not have rezoned the property had you so applied?
>
> A.     I -- I don't know the answer to that.
>
> Q.     So I mean you're not taking the position, "well, I didn't file for a rezoning application because I knew the City of Paris was going to deny it." You don't know what would have happened if you had filed the application. Is that a fair statement?
>
> A.     That's correct. There were several variables.
>
> Q.     All right. What were the variables?
>
> A.     There could have been disputes within the City Council or within the City, with any of the adjoining neighbors.
>
> Q.     Was one of your concerns, "well, if I file an application to rezone, these neighbors around here might all show up en masse and protest it"?
>
> A.     That was definitely a possibility.
>
> Q.     All right. But you don't know that?
>
> A.     I don't know that.

14

As in his previous appeal, Abbott relies on the futility exception to the final decision rule of *Mayhew*, 964 S.W.2d at 929, 931 ("futile variance requests or re-applications are not required"). In our previous opinion, we distinguished *Mayhew*, finding, "The lack of a final opinion from the city council, failure to apply for rezoning or variance, and lack of attempt at negotiation or compromise after the permit denial distinguish this case from *Mayhew* and lead us to conclude that the futility doctrine cannot be employed here." *Abbott*, 360 S.W.3d at 581. We ultimately concluded that Abbott's takings claims were not ripe for adjudication. *Id*. at 582. They remain so.

Abbott's ineffectual attempts to obtain a final decision from the City—presenting a document requesting relief not permitted under the City's zoning ordinance and attempting to appeal the City's rejection of this document to the board of adjustment, which had no jurisdiction to act—are not sufficient to invoke the futility exception. Abbott has not filed for rezoning, has not requested a variance, and has not appealed the denial of the building permit application.

---

Q. And whether or not there had been any disputes on the City Council about the rezoning, you don't know that?

A. No.

Q. All right. Whether Planning and Zoning Commission would have approved a rezoning, you don't know that?

A. No, sir.

Q. Whether you could have sought any relief from the Board of Adjustments, you don't know that?

A. No, sir.

Q. All right. But you consciously chose not to apply to rezone the property?

A. That's correct.

Because Abbott has not obtained a final decision through use of administrative procedures, we conclude that Abbott's state takings claim was not ripe.[9]

### B.    Due Process Claims

Abbott contends that his substantive due process rights were violated when, after the initial ratification of the city manager's letter, he was denied an opportunity to be heard and further consideration by city officials was conducted in closed-door sessions in violation of the Texas Open Meetings Act.  He claims such actions were both arbitrary and irrational with no foundation in reason.  Consequently, Abbott contends that such actions should be set aside based on a violation of substantive due process, citing *Mayhew*, 964 S.W.2d at 938.  The issue of the city manager's letter predated Abbott's first lawsuit and was addressed by this Court in its previous opinion.  In that appeal, although he had the opportunity to do so, Abbott did not raise a due process claim relating to the alleged ratification of the city manager's letter.  We find that this issue is now barred by the doctrine of res judicata.  *See Amstadt*, 919 S.W.2d at 652.

Abbott also alleges a procedural due process violation based on the City's position that rezoning is the appropriate course of action, "thus requiring [him] to seek relief through a

_____

[9]Abbott contends that he is entitled to pursue his takings claims on the additional ground that the City's repudiation of the agreements set forth in the city manager's letter did not substantially advance a legitimate governmental interest, in reliance on *Sheffield Development Co. v. City of Glenn Heights*, 140 S.W.3d 660, 674 (Tex. 2004).  In his original appeal, Abbott claimed the city manager's letter amounted to a contract.  We addressed that contention and determined that the trial court lacked jurisdiction over that claim.  *Abbott*, 360 S.W.3d at 576–77.  Res judicata was raised as an affirmative defense in the City's answer to Abbott's second lawsuit.  *See* TEX. R. CIV. P. 94.  "Res judicata, or claims preclusion, prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit." *Barr v. Resolution Trust Corp. ex rel Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex. 1992).  It requires proof of three elements:  (1) a prior final judgment on the merits by a court of competent jurisdiction, (2) identity of parties or those in privity with them, and (3) a second action based on the same claims that were raised or could have been raised in the first action.  *Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996).  Because Abbott could have raised the repudiation claim in connection with the initial lawsuit, the judgment in that lawsuit precludes its relitigation here.

complicated process, rather than through an administrative agency." The zoning ordinance and the procedures in place for requesting a zoning change provide an appropriate and meaningful opportunity to be heard. Because Abbott failed to avail himself of this opportunity to be heard, he cannot now assert that his procedural due process rights were violated.

### C. Equal Protection Claim

Finally, Abbott asserts an as-applied equal protection claim, contending that he has been treated differently from other similarly-situated landowners without any reasonable basis. *See Mayhew*, 964 S.W.2d at 939. As recognized in our previous opinion, "An equal protection claim may be asserted by a plaintiff as a 'class of one' if he alleges that he has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment." *Abbott*, 360 S.W.3d at 583 (quoting *City of Dallas v. Jones*, 331 S.W.3d 781, 787 (Tex. App. Dallas—2010, pet dism'd)). Abbott's pleadings invoking the Equal Protection Clause assert that "Defendants' actions in denying Plaintiff's right to develop his property in accordance with the City Manager's Letter, constitutes a violation of Plaintiff's right to equal protection . . . inasmuch as the City's conduct was not rationally related to a legitimate state interest and unfairly discriminates against the Plaintiff." These are the same allegations pled in Abbott's original lawsuit. Our decision in that case bars reconsideration of this issue now. *See Amstadt*, 919 S.W.2d at 652.[10]

---

[10]As we stated in our previous opinion, "It is critical . . . that the plaintiff allege he is being treated differently from those whose situation is directly comparable in all material respects." *Abbott*, 360 S.W.3d at 583. As in the previous lawsuit, Abbott has failed to allege facts that show he was treated differently from others who were similarly situated.

## IV.     Conclusion

We affirm the judgment of the trial court.


Jack Carter
Justice

Date Submitted:     February 18, 2014
Date Decided:       March 7, 2014